Walter L. PEACOCK, et al.,
Plaintiffs-Appellants,

v.

The BOARD OF SCHOOL COMMISSIONERS OF the CITY OF INDIANAPOLIS, Defendant-Appellee.

No. 82–1866.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 14, 1983.[*]

Decided Nov. 16, 1983.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Nelson G. Grills, Indianapolis, Ind., for plaintiffs-appellants.

John Wood, Bamberger & Feibleman, Thomas C. Scherer, Indianapolis, Ind., for defendant-appellee.

Before BAUER, ESCHBACH and COFFEY, Circuit Judges.

PER CURIAM.

In the face of 7000 excess places in the city high school system, and a desegregation suit filed by the federal government, *United States of America v. Board of School Commissioners,* No. IP68–C–225, the Board of School Commissioners of the City of Indianapolis (the "Board") was faced with the necessity of closing one of the ten city high schools, and rearranging attendance districts for the remaining nine. In early March, 1981, after public hearings, the Board decided to close Shortridge High School. The final desegregation plan, predicated on the closing of Shortridge and the accompanying reassignment of students, was presented to Judge Dillin who approved the plan on April 22, 1981. The plan went into effect that fall.

Plaintiffs in the instant suit are four parents of Shortridge students. They filed suit in state court on May 5, 1981, arguing that the decision to close Shortridge denied them due process under the Fourteenth Amendment. Plaintiffs requested the court to enjoin the closing, order the Board to adopt written standards for the closing of schools, and conduct a hearing to receive evidence as to which if any schools were to be closed. Defendants promptly removed the case to federal court. On October 15, 1981, Judge Noland dismissed the case under Rule 12(b)(1), Fed.R.Civ.P.; because the relief sought conflicted with the order in the desegregation case, the suit amounted to an impermissible collateral attack on that order. He found this conclusion "compelled when the plaintiffs' remedy is intervention in the [desegregation case]." Plaintiffs did not appeal this decision. Instead, on November 20, 1981, they sought leave from Judge Noland to file an amended complaint, and on November 24, 1981 sought leave from Judge Dillin to intervene in the desegregation case. On January 13, 1982, finding that the amendment stated nothing new, Judge Noland denied leave to file an amended complaint. On January 15, 1982, Judge Dillin denied plaintiffs leave to intervene in the desegregation suit. He found no common questions of law or fact sufficient to allow permissive intervention under Rule 24(b), Fed.R.Civ.P., and concluded that the motion, filed three months into the new school year, was untimely. Plaintiffs took no appeal from the denial of their motion for intervention. Instead, on February 12, 1982 they filed a motion for reconsideration under Rule 60(b), Fed.R.Civ.P.,[1] before Judge Noland, arguing that Judge Dillin's refusal to allow intervention was a "newly discovered condition of fact" justifying relief under Rule 60(b)(2), or generally amounted to grounds for relief from judgment under the catch-all of Rule 60(b)(6). Judge Noland denied the motion for reconsideration, and this appeal ensued.

■■■ Although appellants assert that "this appeal results from a denial of the constitutional protections of the appellants by a combination of judgments," the one and only question before us is whether it was an abuse of discretion for Judge Noland to refuse to vacate the judgment in light of Judge Dillin's decision denying intervention. The merits of Judge Noland's original dismissal of the case, and Judge Dillin's refusal to allow intervention were not appealed,[2] and are not before us now.[3]

1. Rule 60(b), a rule of equity, provides in part: On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judg-

ment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

2. On appeal, appellants maintain that these two original decisions were not appealable. That is clearly inaccurate as a matter of law.

3. See note 3 on page 213.

Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. *DiVito v. Fidelity and Deposit Company of Maryland,* 361 F.2d 936, 938 (7th Cir.1966). A motion to vacate judgment is addressed to the sound discretion of the district court, and an abuse of discretion must be shown before a denial of such motion will be overturned on appeal. *Planet Corp. v. Sullivan,* 702 F.2d 123, 125 (7th Cir.1983). Appellants have the burden of showing that the denial of their 60(b) motion amounted to an abuse of discretion. *Id.*

Appellants attempt to bring themselves within the ambit of 60(b)(2) by explaining that Judge Dillin's decision denying intervention was a "newly discovered condition of fact" which could not have been discovered, with or without "due diligence," prior to the time the judge ruled. That statement of the situation is perfectly accurate as far as it goes, but it does not necessarily follow that 60(b)(2) is applicable under these circumstances. Appellants refer us to no cases in which 60(b)(2) relief is sought on the grounds of a post-judgment denial of intervention in another case, and our research discloses none. We therefore must consider whether 60(b)(2) is an appropriate avenue for relief.

■ Prior to the 1948 amendments to the Rules of Civil Procedure, newly discovered evidence was not grounds for relief under 60(b), although it might be a ground for a new trial under Rule 59. In the 1948 amendments, the time for moving for a new trial was reduced to ten days, and 60(b)(2) was added to allow relief from judgment within a reasonable time, not to exceed one year, on grounds of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new

trial under Rule 59(b)." Rule 60(b)(2), then, is analogous to Rule 59(b), and the same criteria apply in evaluating "new evidence" offered under the two rules. 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2859 (1973).

The most obvious requirement of 59(b) is that there have been a trial, and 60(b)(2) would seem to require one as well. In *Flett v. W.A. Alexander & Co.,* 302 F.2d 321, 324 (7th Cir.), *cert. denied,* 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77 (1962), this circuit affirmed on the merits the denial of a Rule 60(b)(2) motion seeking reconsideration of a dismissal for failure to state a claim, but expressed "grave doubts" about the applicability of 60(b)(2) where there had been no trial and no evidence presented. *See also Gauck v. Meleski,* 346 F.2d 433 (5th Cir.1965), in which plaintiffs successfully used 60(b)(2) to reopen a summary judgment; although the use of the 60(b)(2) motion was not challenged on the appeal of the merits of the regranted summary judgment, the court commented that the trial court did not commit clear error in reopening the judgment. *Id.* at 435, n. 2.

■ Even assuming that Rule 60(b)(2) can be applicable to a 12(b)(1) dismissal, it seems clear that the motion must involve "evidence" in some technical sense rather than just factual information of some variety. According to Professor Moore, the distinction between the type of evidence warranting Rule 59 and Rule 60(b)(2) relief is one of degree rather than kind; 60(b)(2), allowing a more belated attack on a judgment, requires a stronger showing. 7 Moore's Federal Practice ¶ 60.23[4] (1982). The evidence must be material, admissible, credible, not merely cumulative or impeaching, and likely to change the outcome upon

---

A dismissal of a case is a final judgment for purposes of 28 U.S.C. § 1291, and in *Reedsburg Bank v. Apollo,* 508 F.2d 995 (7th Cir.1975), this circuit disapproved any distinction in appealability between orders denying permissive intervention and those denying intervention of right. It is also apparent from appellants' filings before Judge Noland on the 60(b) motion that their decision not to appeal the October 15th dismissal was a tactical one.

3. Accordingly, we will not consider appellants' arguments (raised for the first time on appeal) that the two original decisions, either singly or in combination with each other and the order denying the 60(b) motion, denied appellants any rights under Article III, Section 2 of the Constitution, or the Fifth and Tenth Amendments.

retrial. *United States v. Walus,* 616 F.2d 283, 287–88 (7th Cir.1980).

Under Rule 59, the evidence also must have been in existence at the time of trial, and by analogy, and as numerous courts and commentators have concluded, the requirement is the same for Rule 60(b)(2). *See, e.g.,* 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2859 (1973); *Corex Corp. v. United States,* 638 F.2d 119 (9th Cir.1981) (fact that the district court considered after-occurring events in granting a 60(b)(2) motion was grounds for reversal); *Ryan v. U.S. Lines Co.,* 303 F.2d 430 (2d Cir.1962) (result of new physical examination was not "newly discovered evidence" that would permit opening the judgment); *Brown v. Pennsylvania R. Co.,* 282 F.2d 522 (3d Cir.1960), *cert. denied,* 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1961) (disqualification for service of a railway employee one month after his FELA action was not "newly discovered evidence"). While this court did not itemize this "prior existence" requirement in *Walus,* 616 F.2d at 287–88, it is subsumed in the "due diligence" requirement; diligence is an issue only if there is evidence to be unearthed. Material not in existence until after trial falls within 60(b)(2) only if it pertains to facts in existence at the time of trial. *Nat. Anti-Hunger Coalition v. Exec. Comm. Etc.,* 711 F.2d 1071, 1075 n. 3 (D.C. Cir.1983) (report prepared after trial but based on pre-existing data); *United States v. Walus,* 616 F.2d 283 (7th Cir.1980) (new affidavits from witnesses who could testify to prior events).

In the case before us, the new information was not "evidence" as the term is used at trial, there was no finding of fact that would be altered by the new information, and the new information was not in any sense in existence at the time of the judgment at issue. In short, we conclude that 60(b)(2) is by its terms inapplicable to appellants' situation.

There are cases in which subsequent events justify 60(b) relief, and appellants cite one such decision, *D.C. Federation of Civic Associations v. Volpe,* 520 F.2d 451 (D.C.Cir.1975). The D.C. Circuit held that a 60(b)(1) motion filed within the time for an appeal is a proper means for calling the trial court's attention to an intervening controlling appellate decision. *Id.* at 453 (citing similar decisions from the Second and Fifth Circuits). This practice allows the trial court to correct a decision that would otherwise be corrected by a timely appeal. 7 Moore's Federal Practice ¶ 60.22[3] at 260–61 (1982). Appellants do not fit this paradigm either. Their 60(b) motion was not filed within the time for appeal (of course it could not have been because Judge Dillin's ruling came much later), and plaintiffs chose not to appeal the dismissal of their case, so the rationale that a prompt 60(b)(1) motion saves the trouble of an appeal is not available. Appellants may hope to obtain an appeal of the dismissal by this route, but it is quite clear that a Rule 60(b) motion cannot do service for an appeal. *See Inryco, Inc. v. Metropolitan Engineering Co., Inc.,* 708 F.2d 1225, 1230 (7th Cir. 1983). And, of course, Judge Dillin's decision to deny intervention effected no change in any applicable law.

Finally, appellants seek to obtain relief under Rule 60(b)(6), "any other reason justifying relief from the operation of the judgment." Relief under this residual clause is available when reasons (1) through (5) are inapplicable, and equitable action is appropriate to accomplish justice. *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 390–91, 93 L.Ed. 266 (1949). Or, to put it another way, the movant's reasons under 60(b)(6) must *justify* relief. 7 Moore's Federal Practice ¶ 60.27[1] at 343 (1982). Even if Judge Dillin's refusal to permit intervention was a "good reason" under 60(b)(6),[4] appellants would still be

---

4. Appellants read Judge Noland's decision as saying that the case is dismissed *because* plaintiffs can obtain relief in the desegregation suit. We think it more likely that he dismissed the case as a collateral attack on another decision, and the fact that plaintiffs could in theory best obtain a modification of the desegregation order by direct intervention was merely evidence

back at square one: their suit seeks relief that is inconsistent with the order in the desegregation case, and thus constitutes a collateral attack on that decision. Appellants thus cannot maintain that justice requires reopening the dismissal.

We therefore conclude that appellants have offered no persuasive reasons for relief under 60(b)(2) or (b)(6), or indeed any other clause of 60(b). There was thus no abuse of discretion in Judge Noland's decision denying the 60(b) motion. The judgment of the district court is AFFIRMED.

that they were indeed attempting a collateral attack. If Judge Noland's decision did not assume that intervention would be available (and we think it did not), a subsequent decision denying intervention would be irrelevant.