**Gerson ULLOA, Petitioner,**

v.

**CITY OF PHILADELPHIA, et al., Respondents.**

**Misc. No. 87–525.**

United States District Court, E.D. Pennsylvania.

May 3, 1988.

---

Luis P. Diaz, Philadelphia, Pa., for petitioner.

Jesse Milan, Jr., Deputy City Sol., Philadelphia, Pa., for City of Philadelphia, et al.

## MEMORANDUM

SHAPIRO, District Judge.

We are asked by petitioner Gerson Ulloa to revisit a case filed in 1979, settled by consent order, finally decided by this court on February 4, 1986, and affirmed by the Third Circuit on September 23, 1986.

Ulloa was one of the named plaintiffs in a Title VII class action [1] brought on behalf of unsuccessful and prospective Hispanic applicants to the Philadelphia Police Department. The plaintiffs alleged that hiring decisions were made on a discriminatory basis.

On May 21, 1984, the cases were settled by consent order and final judgment. The consent order set up a certain procedure for the review of applications for police

---

**1.** There were three class actions consolidated for settlement purposes: *Alvarez v. City of Philadelphia*, No. 77–4424 (E.D.Pa.); *Ulloa v. City of* *Philadelphia*, No. 79–375 (E.D.Pa.); and *Lopez v. City of Philadelphia*, No. 79–1192 (E.D.Pa.).

officer positions submitted by Hispanic persons and rejected by the Police Department. Under the mandated procedure, a three-person panel reviews those applications. The decision of the review panel is final, except that if it is divided, a rejected applicant can appeal to this court. "Such judicial review shall be limited to determining whether or not the rejected applicant has been discriminated against in violation of his constitutional rights." Consent Order, par. 4(e). The consent order further provides that the applicant must be "presently qualified." Par. 4(f)(1), (2).

Ulloa's application was rejected by the Police Department because of his chronic problem with depth perception. The review panel affirmed that decision by a two-to-one vote. Pursuant to the consent order, this court received memoranda, held an evidentiary hearing on August 5 and 7, 1985, and heard oral argument on December 19, 1985, on Ulloa's rejected application. Petitioner conceded that he was not "presently qualified" under the depth perception standards then used by the Police Department. Ulloa's claim at that time, zealously pursued by his counsel, was that the Police Department's vision standards unconstitutionally discriminated against him, and that they were discriminatorily applied to him. Despite extensive discovery and exhaustive presentation, Ulloa's counsel was unable to convince this court[2] (or the Court of Appeals[3]) that the Police Department's vision standards were irrational or that they were discriminatorily applied to Ulloa.

Petitioner subsequently filed motions under Fed.R.Civ.P. 60(b)(2) to have this court reopen the record on the basis of alleged "newly discovered evidence."[4] The City responded to the motions, and this court held a hearing and oral argument to determine whether the motions should be granted. During closing argument on November 20, 1987, petitioner's counsel submitted a motion under Fed.R.Civ.P. 15(b), which requested that the court allow an amendment of his previous motions to conform to his view of the evidence and include claims of fraud under Fed.R.Civ.P. 60(b)(3). For the reasons stated below, petitioner's Rule 60(b)(2) motions and his Rule 15(b) motion will be denied. Even if this court were to grant petitioner's Rule 15(b) motion, the Rule 60(b)(3) motion would be denied on its merits.

## MOTIONS UNDER RULE 60

Fed.R.Civ.P. 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ...

The Court of Appeals interprets "newly discovered evidence" to refer "to evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant." *Brown v. Pennsylvania Railroad Co.*, 282 F.2d 522, 524–25 (3d Cir. 1960), *cert. denied*, 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1961); *see also Peacock v. Board of School Commissioners*, 721 F.2d 210, 214 (7th Cir.1983).

The evidence must have been in existence at the time of the trial (or hearing upon which decision was based), and the movant must have been unable after some effort to have discovered such evidence in time to move for a new trial. The burden on the movant is heavy, and he must show that "the evidence is not merely cumulative or impeaching, that it is material, and that a new trial in which the evi-

---

**2.** Note 1 citations, *supra* (E.D.Pa. February 4, 1986).

**3.** *Alvarez v. City of Philadelphia*, 802 F.2d 445 (3d Cir.1986).

**4.** Petitioner first filed a Rule 60(b) motion on February 2, 1987; it included a discovery demand. On March 20, 1987, petitioner further moved to compel discovery. Those motions were filed under the original civil action numbers, note 1, *supra*. Petitioner wrote to the court on June 27, 1987, to include an additional ground for his Rule 60(b) motion. Petitioner prepared a motion incorporating the previous Rule 60(b) papers on October 9, 1987; on October 23, 1987, this motion was docketed under Misc. No. 87–525.

dence was introduced would probably produce a different result." *Johnson Waste Materials v. Marshall,* 611 F.2d 593, 597 (5th Cir.1980); *see also Peacock, supra,* 721 F.2d at 213–14. While the court gave petitioner the benefit of any doubt in admitting evidence on the record at the hearing, our decision on that evidence is limited to "newly discovered evidence" as that term is described above.

### Evidence on the Treatment of Petitioner's Brother

■ Petitioner argues that his brother, Adoniram Ulloa ("Adoniram"), was treated in a discriminatory manner and that such treatment is somehow relevant to petitioner's case. He contends that Adoniram was medically certified to be a police officer, but later reevaluated for a hearing deficiency (deafness in his right ear) and denied entrance to the Police Academy. After Adoniram's counsel (also counsel here) filed a motion for a temporary restraining order against the City defendants, Adoniram was permitted to enter the Academy with defendants' consent. The court has been provided with certain Adoniram documents, but no such evidence was presented at the most recent hearing.

Petitioner argues that the circumstances of Adoniram's admission to the Police Academy "is yet another piece of evidence of a pattern and practice of discrimination against Mr. Ulloa ..." Petitioner's Motion, October 23, 1987, at p. 7, par. 24. The parties agree that the Adoniram incident occurred after this court's decision on Gerson Ulloa's appeal:

> As per this writing defendants through their counsel, Jesse Milan, Esq., agree that the evidence relating to the rejection and subsequent hiring of Adoniram Ulloa occurred after petitioner's trial and therefore could not be obtained by due

diligence.... The newly discovered evidence with regard to the treatment of Adoniram Ulloa had not yet occurred during the course of trial and was clearly not available to petitioner.

*Id.* at pp. 6–7, pars. 22, 24. If so, it was evidence that could not have been discovered in time to move for a new trial under Fed.R.Civ.P. 59(b). It would not qualify as "newly discovered evidence," and could not be a basis for reopening Gerson Ulloa's case. Cases must be decided on the law and facts as they exist at the evidentiary hearing or trial and not re-decided as later events occur, except in the most unusual circumstances; judicial proceedings cannot be denied finality and repetitively litigated.

But some evidence of Adoniram's treatment was in existence at the time of Gerson Ulloa's hearing. Adoniram's medical reevaluation allegedly occurred on October 1, 1985, prior to oral argument in December, 1985, and almost four months before this court issued its February 4, 1986 decision. Counsel was not excusably ignorant of such evidence; he was keenly aware of it because he was handling both cases.

■ Petitioner had 10 days after the entry of judgment to move for a new trial, to alter or amend the judgment, or for reconsideration. Fed.R.Civ.P. 59;[5] Local Civil Rule 20(g).[6] The date of Adoniram's "rehiring," March 4, 1986, was within 10 days of this court's order of February 26, 1986. The Adoniram evidence was in fact "discovered" in time to make relevant motions, so Rule 60(b)(2) does not permit relief from the final order in Gerson Ulloa's case on this ground.

■ Counsel for petitioner suggested at oral argument that evidence of Adoniram's case alone would not have sustained a motion for new trial, but it takes on significance in light of the other evidence that he presented. The court does not view the

---

**5.** Rule 59 provides:
(b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment.... (e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

**6.** Rule 20(g) provides:
Motions for reconsideration or reargument shall be served within ten (10) days after the entry of the judgment, order, or decree concerned.

evidence of Adoniram's medical reevaluation and subsequent "rehiring" as establishing discrimination against Gerson as an Hispanic. This court cannot say that if it were introduced, it would "probably" lead to a different result. The motion with respect to this evidence will be denied.

### Alleged Statements of Dr. Hayes

Dr. George T. Hayes, the City's Medical Director, testified by deposition at Ulloa's hearing in 1985. Petitioner argues that this court should reopen the record and vacate its previous order on the basis of statements allegedly made by Dr. Hayes several months after this court's final decision. Counsel argues that Dr. Hayes, after being pursued by counsel for petitioner over a period of several months, "agreed that Mr. Ulloa had been treated unfairly and further agreed to help remedy the injustice." Petitioner's Motion, October 23, 1987 at p. 3, par. 4.

The basis for petitioner's argument is an unsigned memorandum dated January 20, 1987, prepared by petitioner's counsel for Dr. Hayes' signature. The court heard the testimony of: Dr. Hayes; Kurt Simons, Ph.D., an opthalmology expert, proffered to substantiate the factual basis for the statements made in the memorandum petitioner attributes to Dr. Hayes;[7] and Gregory Schirm, a witness to communications between petitioner's counsel and Dr. Hayes regarding the memorandum.[8]

This memorandum states that three individuals who were tested at approximately the same time as Ulloa passed their Police Department medical examinations after achieving scores on a particular depth perception test ("Titmus" or "Stereo Fly") similar to the score of Ulloa, who failed. Dr. Hayes argued that he never intended to sign the memorandum without further reviewing the records of the relevant individuals. Counsel for petitioner argued and his witness, Mr. Schirm, testified that Dr. Hayes agreed that the memorandum was accurate, but needed to consult with an attorney at the City Solicitor's Office before signing the document.

■ The scores upon which the conclusions in the memorandum were based were available to petitioner prior to the original hearing. Petitioner maintains that after discussions with petitioner's counsel, Dr. Hayes had a different opinion later about facts adduced or readily available at the original hearing. Such a revised opinion based on then-available facts, even if credible, is not "newly discovered evidence." See Stilwell v. Travelers Insurance Co., 327 F.2d 931, 932–33 (5th Cir.1964) (concluding that particular evidence alleged to be newly discovered could not be excluded because it was not merely a new opinion based on facts already presented).

Moreover, petitioner did not establish that Dr. Hayes had changed his opinion. On the original record, petitioner's counsel never questioned Dr. Hayes regarding the medical examination of the three individuals or asked him to compare their examinations with Ulloa's. Dr. Hayes testified that he concluded upon examination of the pertinent records subsequent to his contact with petitioner's counsel that those individuals cited by petitioner's counsel achieved failing scores as did Ulloa on the Stereo Fly test, but they, in contrast to Ulloa, had

---

7. Dr. Simons testified that one depth perception test ("Stereo Fly") was superior to another ("American Optical") used by the Police Department, that the latter test could not precisely measure 80 arc seconds (the stated standard of the Police Department), and (perhaps) that the City's standards were not valid. However, all this evidence was in existence at the time of trial and could have been produced at that time. Presumably, and there was no evidence to the contrary, Dr. Simons, or someone with similar opinions, was available to testify in 1986.

Nor is Dr. Simons' testimony significant in evaluating whether the statements in the memorandum could be consistent with the opinion of an expert in opthalmology. The issue here is whether there was evidence in existence at the time of the trial that the petitioner was unable after due diligence to discover in time to move for a new trial. The fact that petitioner was able to obtain an expert to substantiate a theory of his case not originally argued only reinforces the conclusion that such arguments could have been made at the time of trial and are not appropriate on a Rule 60(b)(2) motion.

8. Apparently petitioner's counsel asked Mr. Schirm to witness the communications.

passed another depth perception test administered by the Police Department, the "American Optical Sight Screener" test; this testimony was unchallenged and credible. Ulloa never passed either test or maintained that he could have.[9] Dr. Hayes' deposition testimony in 1985 was that a passing score on either test was sufficient, *see* 1985 Hayes quote, *infra,* so petitioner could have investigated the accuracy of the tests and the alleged discriminatory application of the tests prior to the original hearing.

Nor did counsel present other experts on these matters. Petitioner could have developed the comparative treatment of Ulloa and these three other individuals at the original hearing or could have presented the testimony of experts. Petitioner had adequate opportunity to present his case. The fact that counsel formerly pursued some arguments and not others does not make this evidence "newly discovered."

■ Even if it were "newly discovered evidence," and the court accepted petitioner's evidence in a new hearing, the result would likely be the same. On the record as a whole, the court would not be persuaded that Gerson Ulloa was discriminated against because he is Hispanic. The motion with respect to this evidence will also be denied.

## MOTION UNDER RULE 15

Petitioner seeks to amend his previously filed motions to conform them to his view of the evidence adduced at the October 30, 1987 hearing. If granted, petitioner would include a claim to reopen the previous record on the basis of fraud under Fed.R. Civ.P. 60(b)(3). The primary "fraud" alleged by petitioner is that the City misled

him (and the court) at the original proceeding to believe that the written depth perception standards of the Police Department were applied as written.[10]

Fed.R.Civ.P. 15(b) provides:

Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Whether petitioner's motions should be amended under Fed.R.Civ.P. 15 should not be decided on the narrow ground that "motions" are not "pleadings." Fed.R.Civ.P. 7(a). But the procedural posture of the issue before the court must be kept in mind. Petitioner wishes to amend motions to reopen a final decision—almost one year after it was filed and over four months after it was affirmed on appeal. The motions were originally pled under Fed.R.Civ. P. 60(b)(2), and the amendments would

**9.** Petitioner now argues that had he better understood the depth perception standards, he would not have conceded in 1985 that he was not "presently qualified," but would have retaken the American Optical test until he memorized the correct responses. There is no evidence that the three individuals petitioner claims were given preferential treatment passed the tests by memorizing the responses. Petitioner was permitted an examination by an opthalmologist independent of the Police Department. There is no reason to believe petitioner could pass a

depth perception test then or now. The desirability of depth perception tests for police officers is not for this court to decide as long as there was no evidence of discrimination against petitioner as an Hispanic–American.

**10.** Petitioner makes unfounded allegations of perjury against the City's witnesses that would be tortious except in the context of a judicial proceeding.

claim the right to reopen under Fed.R.Civ. P. 60(b)(3).

■ Fed.R.Civ.P. 60(b)(3) provides a means to relieve a party from final judgment where there is "fraud ..., misrepresentation, or other misconduct of an adverse party." Petitioner has the burden of establishing any misconduct by clear and convincing evidence. *Brown, supra,* 282 F.2d at 527; *see also Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 832 (7th Cir.1985) (adding to movant's burden that she show "that the adverse party procured or knew of any false testimony"). The misconduct must have prevented the petitioner from fully and fairly presenting his case, *see, e.g., Square Construction Co. v. Washington Metropolitan Area Transit Authority,* 657 F.2d 68, 71 (4th Cir.1981), and the motion must not be merely an attempt to relitigate the case. *See, e.g., Mastini v. American Telephone & Telegraph Co.,* 369 F.2d 378, 379 (2d Cir. 1966), *cert. denied,* 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967).

No misconduct was established by clear and convincing evidence. The recommended criterion for depth perception used by the Police Department when Ulloa was medically disqualified was 80 arc seconds with Titmus Stereo test or equivalent industrial vision tester. At Dr. Hayes' 1985 deposition, he testified:

> As of January of 1984 the basic test for depth perception was by using a machine made by American Optical.... [Applicants] were required to get three out of the five circles correct, which is approximately 80 seconds of arc.... [If a person did not get three of five], [t]he normal procedure would be that they would be given the opportunity to be tested a second time either by the same examiner or another examiner to attempt to rule out any personal bias of the examiner himself.... [If a person failed the first test and passed the second, he was] subsequently passed.... [If a person failed both tests], we would then give what's called the [Titmus] Stereo Test.

Deposition, August 23, 1985, at 4–9. Petitioner claims that Dr. Hayes testified at the 1987 hearing that the American Optical Sight Screener could not measure arc seconds precisely. From this alleged discrepancy, petitioner argues that either Dr. Hayes perjured himself in 1987 or a fraud was perpetrated in 1985.

However, Dr. Hayes' testimony at the 1987 hearing was not as unequivocal as petitioner suggests. He testified that the American Optical test measured in the "same ballpark" as the Titmus test in terms of arc seconds. We find Dr. Hayes' testimony consistent. "Approximately" and "in the same ballpark" do not connote precision. We also find that the use of the words "or equivalent" in the standard does not suggest precision. Petitioner knew or should have known in 1985 what the standard was, and the scores other applicants achieved on the American Optical test. There was no evidence that the City procured or knew of any misconduct.

At the original hearing, petitioner had the opportunity to present his case. Petitioner could have presented evidence on the inaccuracy or impropriety of the American Optical test or its discriminatory application. The fact that he chose to rely in 1985 on the opinions expressed in Dr. Hayes' deposition (or those of other witnesses for the City) does not meet the standard for proof of fraud required under Rule 60(b)(3).

Although petitioner does not press this point, there was some suggestion that certain carbon copies of medical examination documents with additional writing on them had not been provided to petitioner during the discovery allowed prior to the original hearing. Petitioner received documents on file at the Police Academy. There was no competent or persuasive evidence that the City concealed documents or failed to respond to petitioner's discovery requests. The added writing on the copies of the documents filed by medical personnel makes petitioner's case not stronger, but weaker; the added written comments suggest why the three other individuals passed their medical examinations when petitioner did not.

The court does not find any evidence of misconduct on the part of the City. The

court declines to permit amendment of the motions because it is not warranted by the evidence at the hearing. The evidence did not establish the misconduct the motion papers would allege if amended, so amendment of the papers would be pointless. Petitioner's Rule 15 motion will be denied.

Petitioner's post-decision series of motions is an attempt to relitigate an adverse final decision.[11] After this matter was finally decided, counsel pursued Dr. Hayes over a period of "several months and [had] many meetings" with him. Petitioner's Motion, October 23, 1987, at p. 3, par. 4. The court does not countenance the pursuit of witnesses after a matter is finally decided. Nor, by providing an extensive opportunity for petitioner to argue the motions now decided, do we condone the conduct of petitioner's counsel in this case. Counsel has allowed his personal concern for his client to overcome his professional judgment.

Gerson Ulloa was a representative of a class that achieved substantial benefits in an action settled by consent decree; it is true that notwithstanding Ulloa's sincere efforts on behalf of Hispanic applicants to the Police Department, he received no personal benefit because of his physical disability. That result is regrettable, but not discriminatory. The decree provided a procedure for nondiscriminatory hiring decisions, not a guarantee that any particular person would be hired. There is no entitlement to employment with the Police Department. *See, e.g., Anderson v. City of Philadelphia,* 845 F.2d 1216, 1221 (3d Cir. 1988). It is not uncommon that class representatives do not benefit or benefit less than others. Gerson Ulloa, as others similarly situated, may take comfort from the benefits for Hispanic applicants his efforts have made possible.

### ORDER

AND NOW, this 3d day of May, 1988, upon consideration of petitioner's Fed.R.Civ.P. 60(b)(2) motions, his Fed.R.Civ.P. 15(b) motion, the City's responses thereto, accompanying memoranda and exhibits; following an evidentiary hearing and oral argument; and for the reasons stated in the foregoing memorandum, it is ORDERED that:

1. Petitioner's Rule 60(b)(2) motions are DENIED.

2. Petitioner's Rule 15(b) motion is DENIED.

3. This case is DISMISSED.

---

**11.** We note that in his numerous motions and briefs petitioner has raised but not pursued other previously litigated issues. We do not deal with them here, but perceive them as further evidence that petitioner or his counsel has not accepted the finality of the earlier decision and would like to relitigate it.