In re Lee E. WILLIAMS, Sr., Debtor.

Nationsbanc Mortgage/Federal National Mortgage Association, Appellant,

v.

Lee E. Williams, Sr., Appellee,

and

John H. Germeraad, Trustee, Intervener/Appellee.

No. 99–3206.

United States District Court, C.D. Illinois, Springfield Division.

Oct. 27, 1999.

---

John S. Narmont, Springfield, IL, for Debtor/Appellee.

Andrew J. Nelson, Pierce & Associates, Chicago, IL, for Appellant.

John H. Germeraad, Petersburg, IL, for Intervener/Appellee.

## ORDER

SCOTT, District Judge.

Nationsbanc Mortgage /Federal National Mortgage Association (Nationsbanc) appeals from the Bankruptcy Court's refusal to set aside its determination of the value of Nationsbanc's secured claim and the treatment of the claim under Appellee/Debtor Lee E. Williams' (Williams) Chapter 13 Amended Reorganization Plan. In an order amending the Plan dated October 22, 1998, the Bankruptcy Court determined that Nationsbanc had a secured claim of $8,000.00 and an unsecured claim

of $1,579.75. The Court further amended the Plan to provide for payment of the secured claim in full and payment of 10% of the unsecured claim. Nationsbanc attempted to amend its claim on April 30, 1999, to alter the treatment it received under the October 22, 1998, order. The Bankruptcy Court sustained Williams' objection to this amended claim. The Bankruptcy Court did not abuse its discretion in making this decision. The decision is therefore affirmed.

On April 28, 1998, Williams filed his bankruptcy petition pursuant to Chapter 13 of the Bankruptcy Code. Williams had received a discharge in a Chapter 7 bankruptcy shortly before filing the Chapter 13 petition. He apparently had no remaining debts other than the mortgage on his home held by Nationsbanc. Williams' Chapter 13 Reorganization Plan set forth the treatment of Nationsbanc's claim as follows:

*SECURED DEBTS:*

From the payments received the trustee will pay the following secured creditors:

| Name of Creditor | Collateral | Amount to be Paid |
|---|---|---|
| NationsBank Mortgage | Residence | $8,000.00 (5 years at 7%) |

(This value is based on a Court ordered appraisal)

Nationsbanc received notice of the bankruptcy, a copy of the Plan, and notice of the confirmation hearing. Nationsbanc neither objected to the Plan nor attended the confirmation hearing. The confirmation hearing was continued; Nationsbanc received notice of the continued hearing. Nationsbanc again elected neither to attend the hearing nor to object to confirmation. The Plan was confirmed after the continued hearing by order dated June 25, 1998. The Confirmation Order calls for the Debtor to pay the Trustee $183.00 per month for 60 months. The Trustee was then ordered to pay all claims as follows, "Nations Bank $8,000.00 (5 years at 7% interest)". Nationsbanc did not appeal the Confirmation Order.

On July 27, 1998, Nationsbanc filed a proof of claim. The claim stated Nationsbanc's claim was secured by a mortgage on the debtor's residence. The claim listed the "Principal balance" of the debt as $9,579.05. The claim then listed the "Un-paid principal or unpaid amount of judgement (sic)" as $4,295.04. The claim then listed "Other charges allowable" as $2,856.60, and finally listed the, "TOTAL CLAIM" as $7,151.64. The claim also stated the contract interest rate was 9%.

Trustee John Germeraad did not know quite what to make of the proof of claim— was the amount owed $9,579.05 or $7,151.64, and was the interest rate 7% or 9%? He filed a Motion to Amend the Plan to Establish the Amount of the Claim of Nationsbanc Mortgage Corporation (Motion to Amend). The motion asked the Court to determine the amount of the Nationsbanc claim and to adjust the Plan payments to pay the claim within the five years of the Plan.

Germeraad served Nationsbanc and its counsel with a copy of the motion. The Court set the motion for hearing on September 18, 1998, and sent notice to Nati-

onsbanc. The hearing was continued to October 8, 1998. Nationsbanc received notice of the continued hearing. In response, Nationsbanc filed an amended proof of claim on October 7, 1998, one day before the hearing.

The revised proof of claim first states, "Total Amount of Claim at Time Case filed: $14,581.48." The proof of claim then states, "Amount of arrearage and other charges at time case filed included in secured claim, if any: $16,807.66." The addendum to the proof of claim lists the "Principal Balance: $9,579.05." The addendum then sets forth an "ARREARAGE DETAIL", which is a calculation of, "60 NUMBER OF PAYMENTS IN ARREARS FROM 1/1/97 THROUGH 12/1/2001." The addendum puts the arrearage at $11,940.00 (60 payments at $199.00 per payment), and then adds allowable charges of $4,867.66, consisting primarily of attorney fees from a pre-bankruptcy foreclosure and a shortage in an escrow account. Nationsbanc also attached an amortization schedule showing the amortization of $9,579.05 over 60 months at $199.00 per month.

The Trustee and Williams' counsel appeared at the October 8, 1998, hearing; Nationsbanc did not. It is unclear whether the Court or any other party was aware of the new proof of claim filed one day before the hearing. Nationsbanc asserts on appeal that the Trustee had a copy of the proof of claim. The record contains no evidence to support that assertion. Regardless, the docket entry states that the hearing was held and an order would be forthcoming.

Williams' counsel prepared an order for the Court's signature. The order makes the following determinations:

1. In the prior Chapter 7 proceeding, the Bankruptcy Court determined that the residence was worth $8,000.00;

2. Nationsbanc has an unsecured claim of $1,509.75;

3. It is agreed that the value of $8,000.00 as to the Debtors residence is reasonable;

4. It is agreed that the 7% interest rate is reasonable;

5. The Plan will pay Nationsbanc the secured portion of its claim in the amount of $8,000.00 over 5 years at 7% per annum; and

6. The Plan will pay Nationsbanc 10% of its unsecured claim over the 5 year life of the Plan.

The Trustee signed the draft order under a statement, "AGREED AS TO FORM AND CONTENT." The Bankruptcy Court entered the order on October 22, 1998. The Clerk's notation at the bottom of the order indicates that the Clerk sent a copy of the order that day to the Trustee, Williams' counsel, and Nationsbanc or it's counsel.[1] Nationsbanc did not appeal this order.

On March 23,1999, Nationsbanc filed a Motion to Strike Order Entered October 22, 1998, and to Vacate Order Confirming Chapter 13 Plan (Motion to Vacate). Nationsbanc stated in the motion that, "Counsel for NATIONSBANC was made aware long after the entry of the October 22, 1998, Order, that same was entered, . . . .", but submitted no affidavit or other evidence detailing when Nationsbanc or its counsel became aware of the order, or why both failed to receive the copies sent by the Clerk.

---

1. The notation is on the very bottom of the order, and part of the note is cut off on the photocopy in the appeal record. The word Nationsbanc clearly appears, but it is unclear whether the note means that the copy went to Nationsbanc, to its counsel, or to both.

The Motion to Vacate asked the Bankruptcy Court to strike and vacate the two orders because: (a) the valuation of the house is not supported by an appraisal; (b) the order violated Nationsbanc's due process rights because the notice did not inform Nationsbanc that the value of the property would be an issue at the hearing—from the motion and notice, Nationsbanc thought the Trustee only sought to clarify the inconsistency in its proof of claim; (c) the order improperly determined the validity and extent of a lien without the procedural safeguards of an adversary proceeding; (d) the binding effect of the Confirmation Order does not apply to reconsideration of allowance of a claim; (e) the Plan is not feasible because the note calls for 9% interest and the Plan payments cannot satisfy the debt when recalculated using the correct interest rate; and (f) the Plan improperly modified the mortgage terms in contravention of 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) prohibits modification of mortgage terms if the mortgage debt is, "secured only by a security interest in real property that is the debtor's principal residence."

Two days later, on March 25, 1999, Nationsbanc filed a Motion for Appraisal of Property. In the motion, Nationsbanc asserted that the confirmed Plan called for a court ordered appraisal, but none had been ordered. Nationsbanc asserts the property is worth considerably more than $8,000.00. Nationsbanc attached to the motion a "Broker Price Opinion" dated March 13, 1998, which put the value at $38,900.00 $39,000.00. Nationsbanc also attached a pleading from the Trustee in Williams' prior Chapter 7 bankruptcy which states that: (1) based on the assessed valuation, the house is worth $45,000.00, and further (2) Williams valued the house at $23,000.00 in the prior proceeding. Nationsbanc did not present to the Bankruptcy Court any order, docket entry or other information to contradict the statement in the October 22, 1998, order that the Bankruptcy Court, in the prior Chapter 7 proceeding, fixed the value of the house at $8,000.00.

The Court set the motions for hearing on April 16, 1999. Nationsbanc appeared at that hearing. The Bankruptcy Court did not rule on the motions; rather, the docket states that Nationsbanc would file an amended claim within 10 days.

Nationsbanc then filed its second amended proof of claim. This proof of claim states that the claim is $14,327.47, with interest accruing at the loan's default rate of 9.5%. Williams filed an objection to Nationsbanc's claim. Williams claimed the orders precluded Nationsbanc from amending its claim. The objection was heard on June 11, 1999. Nationsbanc also appeared at that hearing. The Bankruptcy Court entered a minute entry in the docket allowing $11,000.00 of the claim and denying the balance.

Nationsbanc then moved to reconsider the June 11, 1999, order, characterized as an oral order, and to revive its motion to appraise the property (Motion to Reconsider). Nationsbanc argued that modifying the payment terms of its mortgage violated Code § 1322(b)(2). Nationsbanc also argued that a prebankruptcy state foreclosure order was res judicata on the question of the total amount of its claim. Nationsbanc argued that the Bankruptcy Court should allow the second amended claim under Bankruptcy Code § 502(j), which allows reconsideration of claims for cause.

The Bankruptcy Court entered an Order and Opinion on July 19, 1999. The Bankruptcy Court granted the Motion to Reconsider, but then sustained the objection to the claim and restored the October 22, 1998, order's valuation and treatment of

Nationsbanc's claim. The Bankruptcy Court found that the orders were final, nonappealable orders binding on Nationsbanc. Nationsbanc's second amended proof of claim came too late to challenge those determinations. In making this decision the Court found that a copy of the October 22, 1998, order was sent to Nationsbanc on the day it was entered. Nationsbanc thus had amply opportunity to appeal this order and failed to do so.

Nationsbanc appeals from the July 19, 1999, order. Nationsbanc claims that the Bankruptcy Court erred because: (1) the June 25, 1998, and October 22, 1998, orders (Confirmation Orders) violated Code § 1322(b)(2) by improperly modifying the terms of a debt secured only by a mortgage on a principal residence; (2) the Confirmation Orders improperly determined the extent and validity of Nationsbanc's lien without invoking the procedural due safeguards of an adversary proceeding as required by Bankruptcy Rule 7001; and (3) the Confirmation Orders violated due process because the notices did not apprize Nationsbanc that the value of Williams' residence would be addressed at the hearings. Nationsbanc also argues that submitting the October 22, 1998, draft order to the Court without prior review by Nationsbanc constituted an improper *ex parte* communication between the Trustee and the Court, and requests that this Court order the Trustee to disgorge all fees in this case. The Court allowed the Trustee to intervene in this appeal to address this request to disgorge fees.

■ Nationsbanc correctly argued to the Bankruptcy Court that Bankruptcy Code § 502(j), 11 U.S.C. § 502(j), governs the consideration of its Second Amended Proof of Claim. Section 502(j) authorizes creditors to seek reconsideration of claims for cause. The Bankruptcy Code does not define cause. Courts, however, have consistently held that Fed.R.Civ.P. 60, incorporated by reference into Bankruptcy Rule 9024, sets forth the standards for reconsideration under § 502(j) when, as here, reconsideration is sought after confirmation. *In re Cleanmaster Industries, Inc.,* 106 B.R. 628, 630 (9th Cir. BAP 1989); *In re Rankin,* 141 B.R. 315, 319 (Bankr. W.D.Tex.1992).

■ Rule 60 governs motions for relief from final judgments. Bankruptcy Rule 9024 and Rule 60(b) set forth six grounds for granting relief:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has be reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

This Court generally will only reverse a decision to deny relief under § 502(j) if the Bankruptcy Court abused its discretion. *In re Cleanmaster Industries, Inc.,* 106 B.R. at 630.[2] Determination of whether an

---

**2.** Nationsbanc argues as if the Bankruptcy Court denied its motion to vacate and strike the Confirmation Orders. Even if that were so, the motion would have been treated as a motion to set aside those final orders under Bankruptcy Rule 9024. The analysis would

order is void under Rule 60(b)(4), however, is subject to *de novo* review. *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 423 (7th Cir.1998).

Nationsbanc argues that the Confirmation Orders were void *ab initio* because such orders cannot determine the amount of a secured claim, the secured portion of the claim, or the treatment of the claim. Nationsbanc claims that constitutional due process requires that such issues be determined by adversary proceeding, which invoke most of the procedural safeguards of a separate trial—separate complaint, summons, answer, etc. Bankruptcy Rules 7001.

■■ Orders may be void *ab initio* if the court either lacked jurisdiction or rendered judgment in a manner inconsistent with due process of law. *Grun v. Pneumo Abex Corp.*, 163 F.3d at 423. The Bankruptcy Court had subject matter jurisdiction and personal jurisdiction over the parties. 28 U.S.C. §§ 157 and 1334. Due process requires that all litigants receive notice and opportunity to be heard. *Id.* The notice must be, "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

■■ Contrary to Nationsbanc's assertion, the confirmation process afforded it sufficient notice and opportunity to be heard. Nationsbanc received a copy of the Plan. It also received at least 25 days' notice of the time to file objections to the Plan and of the hearing on confirmation. Bankruptcy Rule 2002(b). Such notice and opportunity to be heard meet the requirements of due process. *In re Penrod,* 50 F.3d 459, 464 (7th Cir.1995); *In re Ander-*

*sen,* 215 B.R. 792, 795 (10th Cir. BAP 1998).

Nationsbanc also received sufficient notice and opportunity to be heard regarding the Trustee's Motion to Amend. Nationsbanc argues that the notice of the October 8, 1998, hearing was inadequate because it did not apprize it of the fact that the value of the collateral would be an issue at the hearing. The Trustee's Motion to Amend does not specifically mention the issue of the value of the collateral. The Trustee's motion, however, asks the Bankruptcy Court to determine the treatment of Nationsbanc's claim. Nationsbanc further knew that the June 25, 1998, order limited its claim to $8,000.00, and that the Plan asserted that the value of Williams' interest in the house was $8,000.00. Nationsbanc claims it assumed the reference to a court ordered appraisal in the Plan meant that the Bankruptcy Court would order an appraisal. The June 25, 1998, order should have disabused Nationsbanc of that assumption when no such appraisal was ordered. Under all the circumstances, Nationsbanc was adequately apprized of the pendency of the October 8, 1998, proceeding and had ample opportunity to present its objections. *Cf. Grun,* 163 F.3d at 422–23 (failure to give any notice at all may violate due process).

■■ Nationsbanc also argues that as a matter of bankruptcy law, the Confirmation Orders could not determine the value of its collateral. Such an error of law would not be cause for reconsideration under Rule 60(b) standards since the time to appeal the Confirmation Orders had expired. *McKnight v. United States Steel Corp.,* 726 F.2d 333, 335–36 (7th Cir.1984); *Peacock v. Board of School Commissioners,* 721 F.2d 210, 214 (7th Cir.1983). Moreover, Nationsbanc is incorrect—con-

be the same under either § 502(j) or Rule 9024.

firmation orders can determine value of collateral.

Chapter 13 confirmed plans, "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Once the confirmation order is final and non-appealable, parties in interest, including creditors, are precluded from attacking the plan terms as illegal in a subsequent proceeding. *Matter of Chappell*, 984 F.2d 775, 782 (7th Cir. 1993). Nationsbanc agrees with this general principal, but argues that plans and confirmation orders may not modify secured creditors' liens or determine the value of their secured claims because such matters necessarily adjudicate the extent and validity of the secured creditor's lien. The extent and validity of a lien can only be litigated in an adversary proceeding. Bankruptcy Rule 7001.

Nationsbanc is incorrect for at least two reasons. First, the Confirmation Orders in this case do not adjudicate the extent and validity of Nationsbanc's lien. The Plan and the Confirmation Orders acknowledge that Nationsbanc has a valid mortgage lien. The Plan and Confirmation Order do not question the fact that the mortgage is a valid, first priority lien that extends to all of Williams' interest in the residence. The Plan and the Confirmation Orders further do not attempt to void the mortgage lien under Bankruptcy Code §§ 544, 547, 548, 549, or any other provision in the Code. The Plan and the orders simply do not challenge either the extent or validity of the Nationsbanc lien.

The Confirmation Orders fix the amount of Nationsbanc's allowed secured claim. The Confirmation Orders provide that Nationsbanc has an $8,000.00 claim secured by a house valued at $8,000.00 in a prior bankruptcy proceeding, and a $1,509.75 unsecured claim. All secured creditors' claims may be divided into secured and unsecured portions, depending on the value of the collateral and the debtor's interest in the collateral. The secured portion is equal to the value of the debtor's interest in the collateral subject to the valid, unavoidable lien; the amount owed in excess of the value of the collateral is an unsecured claim. Bankruptcy Code § 506(a). Determining the secured portion of the creditor's claim in no way challenges the validity of the lien. Nationsbanc, therefore, was not entitled to an adversary proceeding because its lien was not challenged.

Rather, the Bankruptcy Court may conduct a hearing to determine the value of debtor's interest in the collateral and the secured portion of the creditor's claim after reasonable notice to interested parties. Bankruptcy Rules 3012 and 9014. No other procedures are required. The confirmation hearing and the hearing on the Trustee's Motion to Amend both met the procedural requirements of Rules 3012 and 9014.[3] The Bankruptcy Court properly could fix the value of the collateral, and so the amount of Nationsbanc's secured claim at these hearings.

Second, Nationsbanc is simply wrong on the law of this Circuit; the confirmation process may modify or even remove a creditor's lien without an adversary proceeding if the creditor participates in the bankruptcy process and the claim is

---

**3.** Nationsbanc actually received more notice for the confirmation hearing, at least 25 days

notice. Bankruptcy Rule 2002(b).

dealt with in the bankruptcy. *In re Penrod*, 50 F.3d at 463; *In re Pence*, 905 F.2d 1107 (7th Cir.1990). In both *Penrod* and *Pence*, the Seventh Circuit upheld a debtor's plan that removed a lien from some collateral securing the creditor's claim. The *Penrod* Court looked to Code § 1141(c), which states that, "after confirmation, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners of the debtor." 50 F.3d at 463. The Court found that the term "interests" included creditors' liens on property. *Id.* The creditor participated in the bankruptcy by filing a proof of claim and the plan dealt with the hogs; thus, the hogs, after confirmation, were free and clear of the creditor's interest; *i.e.*, its lien.

■ Chapter 13, § 1327(c), similarly vests property of the estate in the debtor at confirmation, "free and clear of any claim or interest of any creditor provided for by the plan," unless the plan or the confirmation order provides otherwise. The provision operates in that same manner as § 1141 in Chapter 11. Thus, the Confirmation Orders could have removed the lien of a creditor who, like Nationsbanc, participated in the bankruptcy proceeding by filing a proof of claim.

Nationsbanc cites several opinions from the United States Court of Appeals for the Fourth Circuit to support its position. *In re Deutchman*, 192 F.3d 457 (4th Cir. 1999); *Cen–Pen Corporation v. Hanson*, 58 F.3d 89 (4th Cir.1995); *In re Linkous*, 990 F.2d 160 (4th Cir.1993). To the extent that these decisions (and other lower court decisions cited by Nationsbanc) hold that confirmation orders are not final, binding decisions that control the treatment of secured claims dealt with by the reorganization plan, they are in conflict with the controlling Seventh Circuit decisions in *Penrod* and *Pence*. The *Pence* Court expressly refused to follow cases which held that creditors' liens may not be modified in the confirmation process. 905 F.2d at 1110. This Bankruptcy Court correctly applied the law of this Circuit. The Confirmation Orders were binding final orders that determined the value of Nationsbanc's claims and the treatment of those claims.

■ Nationsbanc raises several other grounds for reversal. Some of Nationsbanc's complaints arguably relate to Rule 60(b)(1),(2), and (3), but none meet the Rule 60(b) standards for cause.

Nationsbanc argues that the Bankruptcy Court could not modify the contractual payment terms of its claim because the claim was secured only by a mortgage lien on Williams' principal residence. 11 U.S.C. § 1322(b)(2); *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).[4] Nationsbanc also argued that as a matter of law real estate valuations must be determined by appraisal. Even if these propositions are correct,[5] such errors of law are not cause under Rule 60 standards.

---

**4.** Nationsbanc argues that *Nobelman* prohibits bifurcating mortgage claims into secured and unsecured portions. *Nobelman* holds that § 1322(b)(2) does not allow Chapter 13 plans to modify the contractual rights of creditors secured only by mortgages on the debtor's principal residence. 508 U.S. at 331, 113 S.Ct. 2106. *Nobelman* does not state that such a claim could not have a secured and unsecured portion—rather, the existence of secured and unsecured portions is unimportant because the creditor's contractual rights cannot be modified. The effect of *Nobelman* has also been limited by a subsequent amendment to § 1322(b)(2). *In re Reeves*, 221 B.R. 756 (Bankr.C.D.Ill.1998). If the Bankruptcy Court confirmed a plan that violated § 1322(b)(2), such an error was an error of law. Errors of law are not cause for reconsideration under Rule 60(b) standards.

**5.** The Court does not address the accuracy or inaccuracy of these two assertions.

*McKnight v. United States Steel Corp.*, 726 F.2d at 335–36; *Peacock v. Board of School Commissioners*, 721 F.2d at 214. Once the Confirmation Orders became final, Nationsbanc could not attack the terms as illegal. *Matter of Chappell*, 984 F.2d at 782. *Cf. Matter of Escobedo*, 28 F.3d 34, 35 n. 1 (7th Cir.1994)(§ 1322(b) requirements are permissive and can be barred by final confirmation order). The Bankruptcy Court did not abuse its discretion in denying reconsideration on this ground.

 Nationsbanc argues it did not appeal because it did not know about the October 22, 1998, order, until "long after" its entry. This in substance is a claim of mistake, inadvertence, or excusable neglect. Rule 60(b)(1). The Bankruptcy Court found that the Clerk sent Nationsbanc the October 22, 1998, order the day it was entered. This would have given Nationsbanc ample time to appeal. The Clerk's notation on the order supports this finding. Nationsbanc presented no evidence to the Bankruptcy Court to contradict this finding, or even to establish when it received the copy of the order, or why it waited until March 23, 1999, to bring the matter to the attention of the Bankruptcy Court.

 Sophisticated creditors like Nationsbanc, "must follow the administration of the bankruptcy estate to determine what aspects of the proceedings they may want to challenge." *In re Pence*, 905 F.2d at 1109. At a minimum, Nationsbanc failed to follow the administration of the case adequately. If it had, it would have known of the October 22, 1998, order in time to appeal. Nationsbanc did not attempt to explain the mistake or the excusable reason for its neglect. Without something more, this Court cannot say that the Bankruptcy Court abused its discretion in rejecting this argument.

 Nationsbanc also submitted a broker's valuation of the residence and a motion from the Chapter 7 Trustee to demonstrate that the $8,000.00 value was too low. This could be new evidence under Rule 60(b)(2); such new evidence, however, must be in existence at the time of trial, but not discovered until later. *Matter of Wildman*, 859 F.2d 553, 558 (7th Cir.1988). This evidence was readily available before the confirmation hearings and the October 8, 1998, hearing. The Bankruptcy Court properly refused to grant reconsideration on this basis.

 Nationsbanc also raises claims of fraud and misconduct by Williams and the Trustee. Nationsbanc arguably claims that Williams deceived both it and the Court regarding the $8,000.00 valuation of the property. Nationsbanc must establish such a fraud or misrepresentation by "clear and convincing evidence." *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 832 (7th Cir.1985), *quoting Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir.1983). The record reveals little or no evidence to support Nationsbanc's complaints.

Nationsbanc asserts that the Plan incorrectly stated that the $8,000.00 value was based on a court ordered appraisal when no such appraisal exists. The Plan does refer to an appraisal; if Nationsbanc had presented some evidence to the Bankruptcy Court that no court ordered appraisal existed, the Bankruptcy Court might have had a basis to consider the question. The bare assertion, however, does not constitute clear and convincing evidence of fraud.

Furthermore, the October 22, 1998, order clarified the basis for the $8,000.00 valuation. The later order states that the $8,000.00 was determined in Williams' previous Chapter 7 bankruptcy. If Nationsbanc could have shown that the Court in the prior bankruptcy did not fix the value

at $8,000.00, a fraud on the Court would be clear. Nationsbanc could easily prove the misstatement by submitting the court file from the prior proceeding. But, Nationsbanc did not present the court file.

 Nationsbanc also claims both Williams and the Trustee engaged in other misconduct. Nationsbanc argues that the Trustee should have called off the October 8, 1998, hearing once Nationsbanc amended and clarified its claim. The claim, however, was filed only one day before the hearing. The Trustee and Nationsbanc dispute whether the Trustee saw the amended claim before the October 8, 1998, hearing. Nationsbanc claims it faxed the amended claim to the Trustee the day before the hearing. Nationsbanc, however, never presented evidence of the fax to the Bankruptcy Court, nor did it present any other evidence to establish that the Trustee was aware of the amended claim. Without such evidence in the record, this Court cannot say that the Bankruptcy Court abused its discretion in denying relief on this basis.

Moreover, the Bankruptcy Court found that the amended claim was even more confusing than the original claim. The Court agrees with that assessment. The October 7, 1998, claim stated two, new, different and inconsistent sums for the total claim: $14,581.48 and $16,807.66. The addendum included a calculation of the past due "arrearage" based on payments due in the future. Even if the Trustee had reviewed such a confusing claim, he still needed clarification; thus,

going forward with the hearing was proper. At a minimum, the Bankruptcy Court's rejection of this argument was not an abuse of discretion.

Nationsbanc argues that even if the Bankruptcy Court did not abuse its discretion under § 502(j), this Court should revoke the October 22, 1998, order because the Trustee improperly submitted the draft October 22, 1998, order to the Court without first submitting it to Nationsbanc for review.[6] On appeal, Nationsbanc characterizes the submission of the draft order as an improper *ex parte* communication. Nationsbanc never asserted to the Bankruptcy Court that the submission was an *ex parte* communication. Arguably, this issue was thus waived. Nationsbanc did, however, argue that the draft should have been submitted to Nationsbanc's counsel for review before tendering it to the Bankruptcy Court. This Court will therefore consider the argument.

 Submitting draft orders to the court without first sending a copy to opposing counsel may sometimes constitute an improper *ex parte* communication. *In re Endicott*, 157 B.R. 255, 259 (W.D.Va. 1993).[7] To merit revocation, however, a party must show either actual prejudice or that the bankruptcy judge abdicated his decision making process. *Id.* Nationsbanc has done neither. Nationsbanc has made no showing that the draft did not embody the Bankruptcy Court's determination made at the October 8, 1998, hearing. Given that Judge Coutrakon would have reviewed the draft before signing it, this

6. The face of the order indicates that Williams, not the Trustee, prepared the order, and so may have submitted it to the court. This difference, however, would not affect whether the communication was *ex parte*. Bankruptcy Rule 9003(a).

7. Williams and the Trustee cite Rule 9003(b) for the proposition that administrative matters, such as draft orders, may be sent to the

court directly without circulating them to opposing counsel. Apart from whether a draft order is an administrative matter, Rule 9003(b) authorized the United States Trustee to communicate with the court on administrative matters, not Chapter 13 trustees or other interested parties. *But see In re Endicott*, 157 B.R. 255, 267 (W.D.Va.1993).

Court has every reason to believe that the draft embodied his decision. If so, the possible *ex parte* nature of the communication did not prejudice Nationsbanc, and the Bankruptcy Court did not abdicate its functions.

Nationsbanc points out that the draft refers to agreements on the reasonableness of the valuation of the home and the 7% interest rate; however, Nationsbanc fails to show that these agreements were not made in open court at the October 8, 1998, hearing, or that the Bankruptcy Court did not adopt the agreements in open court as part of its decision. The Bankruptcy Court may or may not have erred in adopting such agreements without Nationsbanc's consent, but any such possible error would not have been a result of an *ex parte* communication. Without evidence in the record that these decisions were not made in open court, this Court will not revoke the October 22, 1998, order.

Nationsbanc has also asked this Court to order the Trustee to disgorge his fees in this case because of his participation in the claimed improper *ex parte* communication. The request to disgorge fees should have been presented to the Bankruptcy Court in the first instance. This Court, therefore, will not consider the request.

Even if the Court considered the request, Nationsbanc has provided no basis on which to determine whether any sanction is appropriate. If the October 22, 1998, draft order simply embodied the Bankruptcy Court's decision at the October 8, 1998, hearing, the Court sees no need for any sanction. Without more proof, the Court would not order the Trustee to disgorge his fees in any event.

Finally, Nationsbanc observes that Mary Williams also owes Nationsbanc the mortgage debt, and she is not a debtor in this bankruptcy proceeding. The Court does not understand why Nationsbanc makes this observation. True, the Confirmation Orders do not affect the rights and obligations between creditors and co-debtors who do not file bankruptcy; the only impact of the bankruptcy on their relationship is the co-debtor stay. 11 U.S.C. § 1301. Once the stay is lifted, Nationsbanc may pursue Mary Williams for full payment without respect to anything stated in the Confirmation Orders. But, her existence provides no basis for reversing the Bankruptcy Court. The Bankruptcy Court may still confirm plans that affect the rights of the bankruptcy debtor and his creditors.

In sum, the Bankruptcy Court did not err. The Confirmation Orders were final and binding on Nationsbanc. Nationsbanc did not appeal and so waived all errors of law and other issues that could have been raised at that time. Nationsbanc failed to demonstrate any cause for reconsideration of its claim under Bankruptcy Rule § 502(j).

Therefore, the decision of the Bankruptcy Court is AFFIRMED.

IT IS THEREFORE SO ORDERED.