Frank DANIELS, Plaintiff–Appellee,

v.

PIPEFITTERS' ASSOCIATION
LOCAL UNION NO. 597,
Defendant–Appellant.

No. 91–3791.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1992.

Decided Jan. 8, 1993.

Robin B. Potter, Potter & Schaffner, John L. Stainthorp (argued), Peter Schmiedel, Peoples Law Office, Chicago, IL, for plaintiff-appellee.

Albert M. Madden, Central States, Southeast & Southwest Area Pension Fund, Law Dept., Rosemont, IL, Steven B. Varick, McBride, Baker & Coles, David M. Lefkow, Arnstein & Lehr, A. Denison Weaver, Hugh J. McCarthy, Nancy J. Doyle, Collins P. Whitfield (argued), Hugh J. McCarthy, Jr., McCarthy & Associates, Rita L. Martinez, Quaker Oats Co., Robert P. Lyons, Chicago, IL, defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Frank Daniels won a judgment against Pipefitters' Local Union No. 597 (the "Union") for racial discrimination. In the course of settlement proceedings in another case, one of Daniels' witnesses told the Union that he would say that he had perjured himself at the trial. The Union then filed a Rule 60(b)(2) motion for a new trial (Fed.R.Civ.P. 60(b)(2)). At the hearing on the Rule 60(b)(2) motion the witness who had allegedly committed perjury invoked his Fifth Amendment right to silence. The district court found that the statements that the witness had made to the Union were not credible and denied the motion. We have jurisdiction to review this decision pursuant to 28 U.S.C. § 1291. For the following reasons, we affirm the denial of the Rule 60(b)(2) motion.

## I.

Frank Daniels brought suit against the Union for racial discrimination. After the jury returned a verdict in favor of Daniels and awarded damages, the Union appealed to this court. We upheld the jury verdict in *Daniels v. Pipefitters' Association Local Union No. 597,* 945 F.2d 906 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992). The jury verdict was based on evidence that the referral system operated by the Union denied a fair allocation of jobs to African-Americans in general and to Daniels in particular. Daniels and other witnesses testified that the Union had a practice of assigning jobs through the back room

thereby circumventing the normal referral system. One of the witnesses for Daniels was Ronald Chopp who was a white member of the Union. Chopp testified that he had been present when business agents of the Union used racial epithets to describe Daniels and other African-American members.

Chopp filed his own complaint against the Union with the Illinois Human Rights Commission ("HRC"). In the course of settlement negotiations on that complaint, Chopp stated to Steven Varick (the Union's attorney) that his testimony in the *Daniels* case was untrue and was "perjury". Chopp also said that Daniels' attorney had paid other witnesses to testify in the *Daniels* case. These statements were made during a telephone conversation with Varick. However, Chopp refused to testify about his "perjury" unless and until his HRC case was settled favorably. At no time did Chopp say which parts of his testimony were untrue. The Union then filed a Rule 60(b)(2) motion for a new trial on the basis of this "new evidence." At the hearing on the Union's Rule 60(b)(2) motion, Chopp invoked his Fifth Amendment right to silence. In the face of Chopp's silence, the Union specifically asked Chopp whether he had perjured himself at the trial. Chopp remained silent. However, Varick testified that Chopp had told him that his testimony had been "perjured" and that Chopp said he knew of no discrimination by the Union.

The district court refused to draw an adverse inference from Chopp's invocation of the Fifth Amendment. The district court made a finding that although Varick's testimony was credible, Chopp's statements were not credible. On that basis, the district court denied the Rule 60(b)(2) motion. The Union appeals the denial of their motion.

## II.

The Union contends that the district court improperly denied their Rule 60(b)(2) motion because (1) the district court improperly refused to draw an adverse inference from Chopp's invocation of the Fifth

Amendment; and (2) the district court engaged in an improper credibility determination regarding the evidence. We will reverse a district court's decision to deny a Rule 60(b)(2) motion only if it amounts to an abuse of discretion. *Gomez v. Chody,* 867 F.2d 395, 405 (7th Cir.1989).

In its memorandum opinion, the district court concluded that "adverse inferences from assertion of the Fifth Amendment privilege are allowed in civil cases only against the party who invoked the privilege." Mem.Op. at 6. Adverse inferences are based upon the logic that "[s]ilence is often evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 153–54, 44 S.Ct. 54, 55–56, 68 L.Ed. 221 (1923). Therefore, "the Fifth Amendment does not forbid inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.' " *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) (quoting 8 J. Wigmore, Evidence 439).

Daniels now concedes that perhaps the district court's memorandum opinion was not entirely accurate and that an adverse inference may be drawn against a witness who pleads the Fifth Amendment even if that witness is not a party. However, counsel for Daniels argues that this inference would be drawn in a two-step process where the district court would first note that the Fifth Amendment was invoked and then assess whether there was other evidence showing that the inference should be drawn. Daniels argues that the inference need not be drawn in this case because there was no other evidence to show that it was appropriate. In fact, Daniels urges, the only inference to be drawn is that Chopp's original testimony was true and that he invoked the Fifth Amendment only to prevent being caught in a scheme to extort a favorable settlement from the Union on his HRC claim. Daniels also points out that no evidence was presented that would show what parts of Chopp's testimony were perjured, and the district court

could not determine what portion of the testimony to strike. Finally, Daniels urges that even if the district court erred, this error would be harmless because the adverse inference is a permissive inference.

■ We agree that the inference against a witness that may be drawn from the invocation of the Fifth Amendment is permissive. In *Baxter,* 425 U.S. at 317–18, 96 S.Ct. at 1557–58, the Supreme Court noted that the "Fifth Amendment does not *forbid* adverse inferences[:] ... the Amendment 'does not *preclude* the inference....' " *Id.* (quoting 8 J. Wigmore, Evidence 439) (emphasis added). This language indicates that the inference is not required: it *may* be drawn, but it does not necessarily need to be drawn. Furthermore, in *Old Sec. Life Ins. Co. v. Continental Illinois Nat. Bank & Trust,* 740 F.2d 1384, 1398 (7th Cir.1984), we upheld the refusal of a district court to draw inferences from the refusal to testify. Commentators on evidence note that other courts also agree:

> Most lower courts read *Baxter* as *permitting* an adverse inference to be drawn from a party's invocation of the privilege.... A Maryland court, for example, read *Baxter* as requiring that a jury told of a civil defendant's invocation of the privilege in response to requests for admissions must be instructed that it could, *but need not,* infer from the defendant's invocation of the privilege that the answers would be adverse to the defendant.

1 John Strong, et al., McCormick on Evidence 462 (4th ed. 1992) (emphasis added). The inference is permissible, but not required. Therefore, if the district court committed any error in refusing to draw an inference, it is harmless error.

■ The Union's second allegation of error is that the district court impermissibly weighed the credibility of Chopp's testimony. We have listed the prerequisites for relief from a judgment under Rule 60(b)(2) in *Gomez v. Chody,* 867 F.2d 395, 405 (7th Cir.1989). Those prerequisites include a determination that the new evidence be

credible. The Union points out that the decision in *Gomez* relied on *Mumford v. Bowen*, 814 F.2d 328, 330 (7th Cir.1986) and *Peacock v. Board of School Comm'rs*, 721 F.2d 210, 213–14 (7th Cir.1983), which both relied upon *United States v. Walus*, 616 F.2d 283, 287–88 (7th Cir.1980). *Walus* lists only five criteria for Rule 60(b)(2) relief and does not require that the evidence be credible. The Union then concludes, "[t]hus, the credivility [sic] requirement began in a miscitation of *Walus* by the court in *Peacock v. Board of School Comm'rs*." Brief for Appellant at 14–15.[1] The Union further concludes that the "credibility of the newly discovered evidence is for the fact finder, which in this case, was the jury. Entrusting that fact finding discretion to the judge usurps the role of the jury. Moreover, there is no reason for a district court to assess credibility." Appellant's Brief at 15.

These conclusions fly in the face of reason and logic, and the arguments fail for obvious reasons. First, our most recent decisions regarding Rule 60(b)(2) motions are clear that the new evidence must be credible to warrant a new trial. *United States v. McGaughey*, 977 F.2d 1067, 1074–75 (7th Cir.1992); *Gomez*, 867 F.2d at 405; *Mumford*, 814 F.2d at 330. Second, it is only logical that a district court weigh the credibility of evidence before granting or denying a Rule 60(b)(2) motion. Rule 60(b)(2) motions are decided by judges; not by juries. Credibility determinations are necessary to these decisions. To hold otherwise would mean that the district court would have to order a new trial no matter how incredible the new evidence. District courts are required to make findings on factual disputes in many instances. The district court did not intrude into the jury's sphere of decisionmaking, but rather it exercised its own discretion in an appropriate manner in determining that Chopp's statements to Varick were not credible. The district court's overall decision was not an abuse of discretion. Its credibility determi-

nation is well founded in light of the evidence presented to it.

AFFIRMED.

---

1. However, we note that the Union itself quoted language from *Peacock*, including the credibility requirement, in its statement of the relevant

standard for deciding a Rule 60(b)(2) motion. (*Memorandum in Support of Defendant's Motion for Relief from Judgment*, Record at 243–2.)