**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Walter Larry WILLIAMS,
Defendant–Appellant.**

**No. 94–2101.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1994.

Decided Jan. 12, 1995.

Rehearing En Banc Denied
March 31, 1995.

Robert Lee Garrison (argued), Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Nicholas DePento (argued), San Diego, CA, for defendant-appellant.

Before FLAUM, RIPPLE, and GARZA,[*] Circuit Judges.

RIPPLE, Circuit Judge.

Walter Larry Williams was convicted of conspiracy to distribute heroin, in violation of 18 U.S.C. § 846, and possession of heroin with intent to distribute, in violation of 18 U.S.C. § 841(a)(1). Mr. Williams was sentenced to concurrent terms of imprisonment of ten years on each count. On this appeal, Mr. Williams challenges several evidentiary rulings of the district court. He also seeks review of the district court's denial of his motion for the jury to view the scene of some of the related illicit activity. For the reasons set forth in this opinion, we affirm the judgment of the district court.

---

[*] The Honorable Emilio M. Garza, United States Circuit Judge for the Fifth Circuit, is sitting by designation.

# I

## BACKGROUND

### A. *Facts*

Prior to September 1993, the police secured the help of Mark Bonds, an informant. Following the police's direction, Bonds telephonically contacted Tommy Mitchell in San Diego, California. Bonds had obtained heroin from Mitchell on five occasions prior to the phone call. Bonds informed Mitchell that Bonds had "found a buyer" for 10 ounces of heroin. On September 9, 1993, police recorded a call between Bonds and Mitchell in which Mitchell agreed to travel to East St. Louis, Illinois to meet Bonds concerning the heroin transaction.

On September 15, 1993, Mitchell arrived in East St. Louis. Bonds then introduced Mitchell to his "buyer," "DJ," an undercover narcotics detective named Daniel Jones. While taping the conversation, Detective Jones negotiated with Mitchell for the sale of ten ounces of heroin at a price of $50,000. During the course of the conversation, Mitchell referred to "my people" and to an unidentified person "that I trust to bring the product back."

Between September 27, 1993 and October 21, 1993, Detective Jones recorded three additional calls between himself and Mitchell concerning the prospective heroin transaction. Mitchell again travelled to East St. Louis by plane on October 29, 1994. He was accompanied by Walter Williams, the defendant. Both Mitchell and Mr. Williams checked into the Blackmon's Motel in East St. Louis.

After settling into his room, Mitchell contacted Detective Jones and stated that he was ready to proceed with the transaction. Detective Jones attempted to discuss the logistics of the transaction with Mitchell on eight separate occasions that day. On one occasion, Detective Jones talked to Mr. Williams. Mr. Williams told Detective Jones, who was recording the conversation, that "I

thought everything was ready. I'm the one who, uh, this is on me." (Tr. of Government's Ex. 8 at 4).[1] Mr. Williams also stated that "this thing like changed.... [T]hat wasn't the way it was suppose to be.... [a]s far as I'm concerned we got to do it here." (*Id.*) Later, Mr. Williams said to Detective Jones, "I wasn't expecting these problems everything was suppose to be ready.... I tell you what we won't talk by phone." Mitchell told Detective Jones, in the eighth telephone call of the day, that Mr. Williams was "my partner and they there the one didn't want me to come out here in the first place and they said let's go since this dude's for real." (*Id.* at 5).

At approximately 8 p.m. on October 29, Detective Anthony Lachenicht and Bonds observed Mr. Williams retrieve a small gray cylindrical object wrapped in duct tape from under the ice machine at the Blackmon's Motel. Mr. Williams then brought the package to Mitchell's motel room. Mitchell left the motel immediately and travelled to the Matador Lounge in East St. Louis. He was followed by police.

At the Matador Lounge, Detective Jones met Mitchell and asked to see the heroin. Mitchell raised his jacket and revealed a gray cylindrical object wrapped in duct tape stored at his waistband. After signalling to other officers in the area, Detective Jones then attempted to arrest Mitchell. Mitchell fled and threw the cylinder to the ground. However, Mitchell was taken into custody and the cylinder was retrieved. Soon afterward, Mr. Williams was arrested at the Blackmon's Motel.

### B. *Trial Proceedings*

A two-day jury trial was held beginning on February 22, 1994. On the second day of trial, Mitchell entered a plea of guilty, and the proceeding was recessed until February 24. The trial continued after Mitchell's plea, but only in regard to the indictment against Mr. Williams. On February 25, the jury found Mr. Williams guilty of conspiracy to

---

1. At trial, only the actual audiotapes of the telephone calls were admitted. For purposes of assisting the reader, we have cited to the transcription of the calls found in the Appellee's Br.App. A–2 (referencing Government's Ex. 2) and Appellee's Br.App. A–7 (referencing Government's Ex. 8).

distribute heroin, in violation of 21 U.S.C. § 846 and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). On May 3, 1994, the district court sentenced Mr. Williams to a term of ten years of imprisonment on each count, to be served concurrently. On appeal, Mr. Williams submits that his conviction must be reversed because the district court admitted into evidence the tape-recorded statements of his coconspirator, Tommy Mitchell, admitted the gray cylindrical heroin container, and refused Mr. Williams' motion for jury view of the Blackmon's Motel. We shall consider each argument separately.

## II

## DISCUSSION

A. *Admission of Mitchell's Recorded Statements*

Mr. Williams presents a focused argument. He submits that statements of coconspirator Mitchell that were made prior to October 29, 1993 are inadmissible because the record is devoid of any evidence that Mitchell was acting in concert with anyone prior to that date. He therefore submits that the tapes of conversations between Mitchell and the government informant prior to that date are not statements made in the course of the conspiracy because no conspiracy existed during that period. We review the district court's ruling for clear error. *United States v. Rodriguez,* 975 F.2d 404, 408–11 (7th Cir.1992).

■ The basic rules governing the admission of coconspirator statements are well established in the jurisprudence of the Supreme Court and in our cases that follow and apply that jurisprudence. In order to assess the contention of Mr. Williams, we need only state the most fundamental of those principles here. Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if it is offered against a party, is a statement of a coconspirator of the party and was made in furtherance of the conspiracy. In order to comply with this rule, the government must demonstrate by a preponderance of the evidence [2] that the conspiracy existed, that the

defendant and the declarant were members of the conspiracy, and that the statements sought to be admitted were made in furtherance of the conspiracy. *United States v. Schumpert,* 958 F.2d 770, 773 (7th Cir.1992); *United States v. Santiago,* 582 F.2d 1128, 1134 (7th Cir.1978). In making this determination, the court may "examine the hearsay statements sought to be admitted." *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).

■ We believe that the record supports the decision of the district court to admit the statements of coconspirator Mitchell that were made during the period in question. The statements of Mitchell and Williams, when read in their totality, support the conclusion that Williams and Mitchell had conspired prior to October 29. First, Mitchell specifically stated to Detective Jones that Mr. Williams was his partner and that Mr. Williams had advised him not to travel to East St. Louis. (Tr. of Government's Ex. 8 at 5). Additionally, Mr. Williams stated in conversation with Detective Jones that he travelled all the way to East St. Louis and did not expect any problems to occur in the transaction. (*Id.* at 4–5). Earlier, on September 15, Mitchell had stated to Detective Jones that his "people" would transport the drugs, and would travel as an additional security precaution. (Tr. of Government's Ex. 2 at 7).

Other evidence also supports the district court's decision to admit the recorded conversations because it indicates that Mr. Williams participated in the conspiracy. Mr. Williams stated that he sat in a non-adjacent seat to Mitchell on his flight from San Diego because he wanted to sit in the "smoking section." (Jury Trial, Tr. III at 284–85). A government expert witness explained adequately at trial that narcotics dealers often avoid sitting in adjacent seats on airplanes in order to prevent simultaneous arrest. (Jury Trial, Tr. III at 303). Moreover, the government argued, Mr. Williams' explanation for sitting apart from Mitchell was obviously untrue because domestic airline flights no longer contain smoking sections.

---

**2.** *Bourjaily v. United States,* 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987).

■ We cannot say that the district court erred in ruling that the government established by a preponderance of the evidence that a conspiracy existed during the disputed period and that Mr. Williams participated in that conspiracy. Consequently, the disputed six recorded conversations were properly admitted. In any event, we believe that any error on the part of the district court in this regard was certainly harmless. The evidence of Mr. Williams' participation in the conspiracy after October 29 was overwhelming. Two eyewitnesses, including a police detective, saw Mr. Williams retrieve the secreted cylinder at the Blackmon's Motel and take it to Mitchell's room. Within minutes, Mitchell was arrested with the cylinder at a nearby lounge.

B. *The Admission of Heroin and its Container*

Mr. Williams further submits that the gray cylinder of heroin was improperly admitted at trial. Mr. Williams states that under Federal Rule of Evidence 901(a), the government did not establish an adequate foundation to demonstrate that "the matter in question is what its proponent claims." Specifically, Mr. Williams claims that no authentication was shown for the package from its seizure until its arrival at the heroin-testing laboratory. In his brief, he submits that "[t]he record herein is devoid of evidence as to the whereabouts of the package *before* it was delivered to the lab, or the date it was transferred there, or the identity of the delivering party. Under these circumstances, it *cannot* be determined with any reasonable certainty that the subject package *and its contents* were the items seized at the scene." (Appellant's Br. at 19).

■ At trial, Mr. Williams' counsel failed to object to the authentication procedure of the gray cylindrical container and its contents. (Jury Trial, Tr. III at 286–87, 290–92). When a party fails to object in the district court, that party has waived the argument on appeal. An appellate court is "not authorized to correct errors waived below that are not plain." *United States v. Newman,* 965 F.2d 206, 213 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121

L.Ed.2d 377 (1992). A plain error "is not only a clear error but an error likely to have made a difference in the judgment, so that failure to correct it could result in a miscarriage of justice, that is, in the conviction of an innocent person." *Id.*

■ We cannot say that the admission of the cylinder was plain error. The standard for admission of evidence requires a showing that the evidence, when offered at trial, is in substantially the same condition as it was when the crime was allegedly committed. *United States v. Lott,* 854 F.2d 244, 250 (7th Cir.1988). If the trial judge believes that there is a reasonable likelihood that the evidence has not been altered in a material regard, he may permit the introduction of the evidence. *United States v. Aviles,* 623 F.2d 1192, 1198 (7th Cir.1980). Such a decision will only be reversed for clear abuse of discretion. *United States v. Boykins,* 9 F.3d 1278, 1285 (7th Cir.1993) (citing *Lott,* 854 F.2d at 250). As in this case, "[w]here the exhibit's chain of custody is in question but there is no evidence of any tampering, there is a presumption that a system of regularity accompanied the handling of the evidence if the exhibits are at all times within official custody. Gaps in the chain of custody go to the weight of the evidence rather than its admissibility." *Id.* (citations omitted). The district court acted well within its discretion in admitting at trial the gray cylinder and testimony regarding the chemical analysis of its contents.

C. *The Jury View*

■ Mr. Williams contends that the district court abused its discretion by refusing his motion for the jury to view the scene of the Blackmon's Motel and the vantage point from which Detective Anthony Lachenicht supposedly observed Mr. Williams retrieve the gray cylinder from the motel's ice machine. As Mr. Williams correctly notes in his brief, we review the denial of his motion for abuse of discretion. *United States v. Lopez,* 475 F.2d 537, 541 (7th Cir.), *cert. denied,* 414 U.S. 839, 94 S.Ct. 89, 38 L.Ed.2d 74 (1973). In Mr. Williams' view, "the denial to view a location may be proper *if* it is based upon a specific finding by the trial court that

photographic evidence on hand provided an adequate substitute." (Appellant's Br. at 21). We cannot accept that proposition. The district court is permitted to weigh a variety of factors involving the fair and efficient conduct of the trial in ruling on such a matter. Here, the district court expressed concern over the transport of jurors to the Blackmon's Motel because of difficult logistics and the risk of physical harm to the jurors in such an unsecured area. (Jury Trial, Tr. III at 296–98). Moreover, the district court permitted the jury to view a twenty-minute videotape, offered by Mr. Williams, of the premises at issue. The district court acted well within its discretion in denying Mr. Williams' motion.

### III

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.