**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melvin D. WOOLFOLK, Defendant–
Appellant.**

No. 99–1651.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1999.

Decided Dec. 10, 1999.

Richard H. Lloyd (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Andrea L. Smith (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellant.

Before BAUER, FLAUM, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

On September 23, 1998, a jury convicted Melvin Woolfolk of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Woolfolk challenges the district court's ruling denying his motion for new trial on two counts—for denial of a jury view and for newly discovered evidence. Woolfolk's pretrial motion for a jury view of the scene of his arrest was denied on September 22, 1998. On November 19, 1998, Woolfolk filed an amended motion for a new trial based on newly discovered evidence. An evidentiary hearing was held on the motion on January 14, 1999 in which Fannie King testified. The district court filed an order on February 18, 1999 denying Woolfolk's motion for a new trial. A motion for reconsideration was denied on March 3, 1999 and Woolfolk was sentenced on March 8, 1999. Woolfolk now appeals the district court's order denying the motion for new trial. We affirm the district court's decision.

## I. Background

On September 17, 1997, United States Marshals, as part of Operation Outlaw, received an outstanding arrest warrant for Henry Byrd. Operation Outlaw is a task force assembled to pursue federal, state, and local fugitives. Byrd was known to have an address in Venice, Illinois. The Venice Chief of Police provided the marshals with a photo of Byrd and told them that he is known to frequent Garrett's Lounge in Venice.

Six to eight deputy marshals went to Garrett's Lounge in unmarked vehicles between 3:00 and 4:00 p.m. As the deputies arrived at Garrett's, they observed several people standing outside the lounge. Deputy Leahy made eye contact with one man he believed to be Byrd, who later was identified as Woolfolk. He acted in a suspicious manner and then ran toward the lounge. At which time deputy Leahy got out of his vehicle and announced, "police, stop." Woolfolk turned and ran into the lounge, Deputy Leahy followed. He ran across the dance floor toward the back of the bar with Deputy Leahy in pursuit. As Woolfolk ran past a partition, he turned, reached into his waistband and made a throwing motion with his right hand. Deputy Leahy testified that he then heard a loud thump. He subdued Woolfolk first and then walked back to the area where he heard the thump, and found a loaded Smith and Wesson .38 special in the trash can behind the partition. Leahy testified that during that period there was no one else near the trash can.

Woolfolk was arrested and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In a pretrial motion, Woolfolk's attorney moved for an order allowing the jury to view the scene, arguing that it was crucial to the issue of Woolfolk's guilt or innocence. Specifically, Woolfolk argued that the jury needed to view the scene in order to accurately determine what the U.S. Marshals could have seen when they entered the lounge, including whether the interior lighting would have prevented the marshals from seeing Woolfolk's throwing motion. The district court denied the motion

stating, "there is nothing so peculiar to this case that it cannot be addressed through the normal adversarial process."

On September 23, 1998, the jury convicted Woolfolk of being a felon in possession of a firearm. On September 29, 1998, Woolfolk filed a motion for a new trial based on the court's denial of a jury view. On November 19, 1998, Woolfolk filed an amended motion for new trial based on newly discovered evidence. The court held an evidentiary hearing to hear this new evidence on January 14, 1999.

At the evidentiary hearing, Fannie King testified that she was unaware that Woolfolk had been arrested until August or September of 1998. She happened to be in Venice visiting her daughter and grandchildren when she saw Woolfolk's grandmother on the street. As they talked about their families, King learned that Woolfolk had been charged with possession of a gun while at Garrett's Lounge. King at that time thought it might possibly be the same gun she had left at the Lounge but did not mention it to anyone.

In October 1998, while again visiting her daughter, King overheard Woolfolk's ex-girlfriend and another person discussing Woolfolk's 17 year sentence. King decided to contact Woolfolk's attorney to explain that she had placed a gun in the trash can on the same day Woolfolk had been arrested. King explained that she had been apartment hunting in Venice, Illinois on September 17, 1997. Around midday she was walking in the alley behind Garrett's Lounge when she stumbled on something that hurt her right foot. She looked down and realized that it was a gun. She used a paper napkin from around a glass of wine she was carrying to pick up the gun so that her fingerprints would not be on the gun. King then claimed to have put the gun under her long T-shirt and walked into Garrett's Lounge to see if it belonged to anyone. On her way into the lounge, she passed Woolfolk smoking a "blunt," a marijuana cigarette. As she was walking toward the bathroom, she heard someone

yell "Po Po," meaning the police. She panicked, tossed the gun into a trash can, and walked out of the Lounge. As she left Garrett's, she claims to have passed the deputy marshals, who were wearing beige or brown uniforms. After that day King said that she did not return to Venice until May of 1998.

Deputy Marshals James Taylor and John Leahy testified, consistent with their trial testimony, that when they arrived at Garrett's Lounge Woolfolk ran inside with Deputy Leahy in pursuit. Taylor followed close behind. Both deputies testified that no one passed them as they entered Garrett's. The evidence revealed that the vestibule in Garrett's was too narrow for anyone to pass them without their knowledge. Leahy saw Woolfolk take something out of his waistband and make a throwing motion, after which he heard something land. He first apprehended Woolfolk at the end of the bar and then went back to check inside the trash can where he found the gun. The deputies also testified that they were wearing blue jeans and blue polo shirts with the U.S. Marshall insignia on the front and "Police" or "U.S. Marshal" on the back. Leahy further testified that he was unfamiliar with any beige marshal uniforms.

The court was not persuaded by King's testimony and denied Woolfolk's motion for a new trial on February 17, 1999. Woolfolk now appeals this decision.

II. Analysis.

A. Sufficiency of Evidence

■ In order to secure a conviction under section 922(g)(1), the government must prove, beyond a reasonable doubt, that: (1) the defendant had a previous felony conviction, (2) the defendant possessed a firearm, and (3) the firearm had traveled in or affected interstate commerce. *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.1990); *United States v. Petitjean*, 883 F.2d 1341, 1347 (7th Cir.1989). In this case, the parties stipulated to both the

previous conviction and the interstate commerce elements. The only issue before the jury, and the subject of this appeal, is the element of possession of a firearm.

In weighing a challenge on appeal to the sufficiency of the evidence used by a jury to convict a defendant, this court applies a highly deferential standard. *United States v. Kamel*, 965 F.2d 484, 489 (7th Cir.1992). The court draws all reasonable inferences from the evidence in favor of the government, and we will reverse only if no reasonable jury could have found the defendant guilty of the charged offense beyond a reasonable doubt. *United States v. Alcantar*, 83 F.3d 185, 189 (7th Cir.1996); *United States v. Wallace*, 32 F.3d 1171, 1173 (7th Cir.1994); *see also United States v. Henderson*, 58 F.3d 1145, 1148 (7th Cir.1995). Woolfolk bears a heavy burden when the facts turn upon credibility determinations. *United States v. Buggs*, 904 F.2d 1070, 1074 (7th Cir. 1990). Questions of witness credibility are reserved for the jury, and its assessments will not be second guessed by an appellate panel. *See, e.g., Henderson*, 58 F.3d at 1148; *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989). "Credibility is for the jury, not this Court, to determine." *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir.1990). As a result, appellate attacks on the credibility of a trial witness are almost always unavailing. *Henderson*, 58 F.3d at 1148. When a jury has chosen to credit crucial testimony with full knowledge of the many faults of the witness providing it, we have no basis to interfere, as the jury is the final arbiter on such questions. *See Henderson*, 58 F.3d at 1149; *United States v. Patterson*, 23 F.3d 1239, 1244 (7th Cir.1994).

Woolfolk argues that the evidence at trial was insufficient for a reasonable trier of fact to find beyond a reasonable doubt that he in fact possessed the gun on September 17, 1997. Woolfolk does not dispute the fact that he was standing outside the Lounge smoking marijuana and that he ran into the Lounge when the Marshals arrived. In fact, he offers that this suspicious behavior is just as consistent with smoking a controlled substance as it is with possession of a firearm. In other words, Woolfolk offers one illegal act for another as his defense. It is, however, up to the jury to determine how much credit these arguments should receive and they found Woolfolk in possession of a firearm. We cannot second guess them.

Woolfolk further argues that the lighting in the Lounge was extremely dark, making it impossible for the deputy's eyes to adjust immediately from the bright sunlight. This obstacle, he argues, coupled with the shoulder high partition, prevented the deputy from seeing any throwing motion. Along with the other evidence presented at trial, which included testimony from the deputies, the patrons in the bar and photographs of the Lounge and the partition, the jury convicted Woolfolk. Woolfolk had the opportunity to, and did, present these arguments to the jury. These are questions of fact that should be left to the jury to decipher. In this case, the jury made a reasonable determination, therefore we cannot interfere with that decision.

## B. Newly Discovered Evidence

Woolfolk argues that the court abused its discretion when it denied his motion for new trial based on newly discovered evidence. Rule 33 of the Federal Rules of Criminal Procedure provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." The rule commits the decision to the sound discretion of the trial judge. *See United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir.1996); *United States v. Maloney*, 71 F.3d 645, 654 (7th Cir.1995); *United States v. Theodosopoulos*, 48 F.3d 1438, 1448 (7th Cir.1995). As a reviewing court, "we approach such motions with great caution and are wary of second-guessing the determinations of both judge and jury." *United*

*States v. DePriest,* 6 F.3d 1201, 1216 (7th Cir.1993).

■ Probably the most frequent basis for a Rule 33 motion—and the only one specifically mentioned in the rule—is one "based on the ground of newly discovered evidence." *United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992). To receive a new trial based on newly discovered evidence, the defendant must demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *Id.; Jarrett v. United States,* 822 F.2d 1438, 1445 (7th Cir.1987).

■ After a hearing, the district court found that Woolfolk satisfied the first two elements but found no support for the remaining two elements. In fact, the district court did not even believe King was anywhere near Garrett's Lounge on September 17, 1997 and further found the timing and nature of her testimony was "highly suspicious." In describing her testimony as less than credible, the district judge said, "King's claim that she kicked a gun in the alley, picked it up, hid it under her blouse, and passed several people outside the lounge, including the defendant, to go inside to inquire for the gun's owner is nonsensical." At best, this testimony would have impeached the testimony of Deputy Leahy but it does not show any probability of acquittal by a second jury.[1]

Woolfolk asserts that the district court ignored important facts in evidence and overstated the weight of the evidence. Specifically, Woolfolk questions the basis for the court's assessment of King's credi-

bility suggesting that the decision was based on different cultural experiences rather than the facts of her testimony because she is "a poor, uneducated black woman from small, crime infested towns in southern Illinois." Alternatively, Woolfolk asserts that the district court did not find King incredible, only her "story." In other words, he attempts to separate King's credibility as a person with the credibility of her testimony, as if the two can be separated. This reasoning is absurd. The purpose of the evidentiary hearing was for the district court to assess the credibility of the new witness and to determine the materiality of her testimony. The judge in determining credibility, which is defined as "that quality that makes a witness worthy of belief," must look at all aspects of the witness including not only her testimony but the evidence presented at trial. *See* Black's Law Dictionary 374 (7th ed.1990). Here the district court made such a credibility determination and found King's story incredible. Because the trial judge is in a better position than we to evaluate King's believability—he heard the witnesses and lawyers and watched the jurors as they listened to the evidence—the standard of appellate review is a highly deferential one. *United States v. Morales,* 902 F.2d 604, 605 (7th Cir.1990). Therefore, we find no abuse of discretion in denying the motion for new trial based on newly discovered evidence.

## C. Denial of Jury View

■ Finally, Woolfolk argues that the district court abused its discretion when it denied his motion for the jury to view Garrett's Lounge. It is well-established that the decision whether to grant such a motion rests within the discretion of the

1. The dissent argues that the district court was incorrect in characterizing this evidence as impeaching. Even if the dissent were right in its assertion that this evidence should properly be regarded as substantive, the error of the district court would be harmless. In denying the defendant's motion for a new trial, the district court clearly found that the pro-

posed witness' testimony lacked credibility. The district court found that the defendant had therefore failed to show that the newly-discovered evidence would "probably lead to an acquittal in the event of a new trial." This finding provides a sufficient basis for upholding the decision of the district court.

trial court and is reviewable only for abuse of that discretion. *United States v. Williams*, 44 F.3d 614, 619 (7th Cir.1995), citing *United States v. Lopez*, 475 F.2d 537, 541 (7th Cir.1973). The district court is permitted to weigh a variety of factors involving the fair and efficient conduct of the trial in ruling on such a matter. *Williams*, 44 F.3d at 619.

Woolfolk believes the jury needed to experience firsthand the lighting in Garrett's Lounge in order to see how the partition may have obstructed Leahy's view, thus preventing the deputy from seeing any throwing motion. He stresses the need for the jury to understand and fully appreciate the extent to which the lighting interfered with the deputies' vision when they first entered the Lounge. He argues that it was crucial for the jury to experience the lighting firsthand. The district court disagreed and denied the motion stating, "there is nothing so factually peculiar to this case that it cannot be addressed through a normal adversarial process." We agree. The jury considered ample evidence, presented by both parties, to construe the atmosphere of Garrett's Lounge and make a fair and reasonable decision. Woolfolk was in no way hurt by the refusal to have the jury view the scene. Therefore, the district court did not abuse its discretion in denying the motion for a jury view.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

RIPPLE, Circuit Judge, dissenting.

In determining whether to grant a new trial under Rule 33 of the Federal Rules of Criminal Procedure, the district court must determine: (1) whether the evidence came to light after trial; (2) whether the evidence could not have been discovered sooner with due diligence; (3) whether the evidence is material and not merely impeaching or cumulative; and (4) whether the evidence would probably lead to an acquittal. *United States v. Austin*, 103 F.3d 606, 608–09 (7th Cir.1997). My colleagues and I agree that the first two criteria are not problematic in this case. The evidence at issue came to light after trial and could not have been discovered with due diligence. We disagree, however, on the third and fourth criteria. In my view, the district court misapprehended the record and, because of that misapprehension, failed to appreciate the nature of the newly discovered testimony and its potential for producing a different result at trial.

The district court's disposition of the motion for new trial reveals a crucial misapprehension of the testimony. The district court first summarized, in pertinent part, the evidence from the trial:

> Deputy John Leahy followed the defendant into the lounge, and observed the defendant take something out of his waistband and throw it into a trash barrel near the rear of the bar. After the defendant was detained, a search of the barrel revealed a handgun and a small amount of trash.

*United States v. Woolfolk*, No. 98–CR–30115, slip op. at 1 (S.D.Ill. Feb. 17, 1999). Several pages later, the district court again referred to the marshal's actions: "Leahy apprehended the defendant at the end of the bar after seeing him toss an object—later determined to be the gun—into a trash can." *Id.* at 4. The evidence produced at trial, however, did not establish that the marshal saw a gun being thrown but rather that he saw a throwing motion, heard a noise, and then discovered a gun. Although the inference can be made that a gun was thrown, the evidence is not that the marshal saw the gun being thrown.

Notably, the parties are in agreement about the state of the record. Mr. Woolfolk highlights, in his brief, the fact that the marshal did not see Mr. Woolfolk with

the gun.[1] Also, the Government agrees that the marshal saw a throwing motion and not an object being thrown.[2]

This misapprehension of the marshal's testimony becomes important when analyzing the testimony of Fannie King that was given in the evidentiary hearing for the motion for new trial. At the hearing, King testified that she found a gun outside the bar, picked it up in a paper towel, brought it into the bar to find the owner, heard the police, became scared, and dropped the gun into the trash barrel. In evaluating whether King's evidence was material or merely impeaching or cumulative, the district court stated that, at best, her testimony "would be impeaching of the testimony of Deputy Leahy that he saw the defendant remove an object from his waist and throw it into a trash barrel, resulting in a loud 'thunk.'" *Woolfolk*, No. 98–CR–30115, slip op. at 6. The district court's misapprehension of the facts no doubt contributed significantly to its erroneous determination that King's testimony was simply impeaching of the marshal's testimony. King's testimony does a great deal more than contradict or impeach Deputy Leahy;

it presents, by direct testimony, an explanation for what occurred that is different from the inference adduced on the sole basis of the marshal's testimony. Indeed, the testimony of the two witnesses is compatible. My colleagues, in accepting uncritically the district court's evaluation of King's testimony, similarly fail to assess adequately the significance of her testimony. The panel does not explain why the testimony would be merely impeaching.

With respect to the fourth prong of the test governing the disposition of a motion for new trial, the district court found the testimony of King to be incredible and thus held that Mr. Woolfolk had little probability of acquittal after a new trial. Although the court recites several reasons for its conclusions,[3] at bottom, its assessment of her testimony is grounded in the unwarranted assumption that her testimony contradicts, rather than complements, that of the marshal.

In determining whether to grant a motion for a new trial under Rule 33, a district court certainly must judge the credibility of the witnesses.[4] *See United States*

1. Mr. Woolfolk's brief states in pertinent part:

   There is a partition in the lounge that Woolfolk had to go around to get to the back area, and Leahy said that right before Woolfolk turned to go around the partition Woolfolk looked back at him. As Woolfolk did this, he made a motion to go for the waistband of his pants. Leahy testified that he saw Woolfolk take something out of his waistband and make a throwing motion, after which he heard something land.

   . . . .

   . . . Both Deputy Marshals testified that they never saw a gun in Woolfolk's hand, that they never saw a gun in his waistband, and that they never saw Woolfolk throw the gun.
   Woolfolk's fingerprints were not found on the gun or the bullets taken from the gun.
   Appellant's Opening Brief at 6–7 (Transcript citations omitted).

2. The Government's brief states in pertinent part:

   As defendant was beginning to run past a partition at the back of the lounge, he turned and looked back at Deputy Leahy.

Defendant reached into his waistband and made a throwing motion with his right hand. Deputy Leahy [sic] something hit with a loud distinctive sound, a loud thump. Government's Brief at 6 (Transcript citations omitted).

3. The court noted that from "the reasons given for her presence in the area, through her description of the Deputy United States Marshals' uniforms, her confession of involvement was of 'diminished reliability.'" *Woolfolk*, No. 98–CR–30115, slip op. at 6. The district court considered her testimony to be of low reliability because she had talked to Mr. Woolfolk's grandmother a few times and she had nothing to lose for accepting full responsibility for the gun. *See id.* Without explanation, the court characterized as "nonsensical" the testimony of King that she kicked the gun, picked it up with a paper towel, hid it under her shirt, and then walked past the defendant into the bar. *See id.*

4. Cf. *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 803 (7th Cir.1993). In the context of a Rule 60(b)(2) motion for new trial, under the Federal Rules of Civil Proce-

*v. Griffin*, 84 F.3d 912, 930 (7th Cir.), *cert. denied*, 519 U.S. 999, 117 S.Ct. 495, 136 L.Ed.2d 387, *and cert. denied by*, 519 U.S. 1020, 117 S.Ct. 536, 136 L.Ed.2d 421 (1996). Indeed, the court's credibility determination is entitled to substantial deference and it will not be overturned unless clearly erroneous. *See id.* However, when that estimation is based on an erroneous assumption of the state of the record, it is incumbent on this court to require that the district court revisit the matter and make a new assessment free of the misapprehension that necessarily clouded its denial of a new trial.

dure, the district court may consider the credibility of the evidence. As this court states in *Daniels*, "it is only logical that a district court weigh the credibility of evidence before granting or denying a Rule 60(b)(2) motion." *Id.* The court explains that new trial motions are decided by judges, not juries and credibility determinations are necessary for the court's decision. If the court could not make a credibility determination, then it would have to order a new trial no matter how incredible the evidence. *See id.*