**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony C. MARTIN, Defendant–Appellant.**

**No. 01–1451.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 2001.

Decided Nov. 16, 2001.

Before POSNER, KANNE, and EVANS, Circuit Judges.

### ORDER

Anthony Martin was convicted, after a jury trial, of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The firearm, an Intratec Model AB10, 9mm semiautomatic handgun, commonly called a TEC 9, turned up under a pine tree in the back yard of a house in New Haven, Indiana, following a car chase involving Martin and at least three police vehicles.

The government's theory of the case was that Martin ditched the gun during the chase. The government's case, strong to begin with, got better after Martin made some key admissions to a New Haven detective. On this appeal, Martin claims the jury should not have heard his statement to the detective because it didn't follow a knowing waiver of his *Miranda* rights. The district judge, after a hearing, denied Martin's motion to suppress the

statement, and we review the factual underpinnings of his ruling only for clear error. We conclude, upon review, that Martin's statements were properly admitted against him during the trial.

■ A waiver of *Miranda* rights is valid if it is voluntary, knowing, and intelligent. *United States v. Huerta,* 239 F.3d 865, 873 (7th Cir.2001). Voluntariness depends on whether the waiver "was the product of a rational intellect and free will" or whether it was obtained by "coercive means." *United States v. Brooks,* 125 F.3d 484, 492 (7th Cir.1997) (citations omitted).

■ There is no evidence of coercion in the record. Rather, Martin appears to claim that his waiver was involuntary because he was under the influence of alcohol and marijuana when he waived his rights and admitted possessing the TEC 9. The evidence suggests otherwise. Detective Craig Robison testified at the suppression hearing that he was sitting next to Martin when he read the familiar litany of *Miranda* rights and had Martin sign a "Waiver of Rights" section on a form entitled "Interview: Advice of Rights." Robison said he did not smell alcohol or marijuana and that Martin did not slur his speech. Plus, he said Martin appeared to fully understand the questions asked of him. During the initial questioning, Martin denied any involvement in the events leading to his arrest, and Robison ceased questioning. Twenty minutes later, however, Martin knocked on the window of his cell door and told Robison he wanted to talk. During this second episode, in which Martin made the relevant admissions, Robison said Martin was coherent and cooperative. At the end of this session, Robison noted on the waiver form: "*1ST* INCOHERENT, RAMBLING, NO CAR, NO GUNS," then "*2ND* DROVE CAR, RAN FROM POLICE, ESCAPE W/TEC 9." Martin claims that these notations substantiate that he was in an intoxicated condition. But Robison testified that he made the notations because he suspected that Martin wanted him to *believe* he was intoxicated, not because Martin was actually intoxicated. Judge Sharp called Robison "careful" and "believable."

The judge also did not have to take Robison's word for it. Officer Kristopher Rice, who was working dispatch, observed Martin when he was brought into the police station. He said Martin was cooperative and "very coherent," although he was "upset" because the police took his shoes and his jeans were ripped. Rice, who could view Martin's cell by video camera, said Martin did not appear to be pacing or antsy and exhibited no signs of intoxication. Rice was also present in the holding cell when Robison first questioned Martin. He testified at the suppression hearing that it was not until Robison asked Martin whether he was under the influence of drugs or alcohol that Martin acted "like he had been severely drinking or was very intoxicated." Rice believed that Martin was faking.

Officer Brent Bolinger was present in the cell during both sets of questioning. He stated that Martin was coherent until Robison started asking more detailed questions (thus revealing his knowledge of Martin's exploits), at which point Martin "seem[ed] to become more confused and incoherent." Bolinger, too, believed that Martin was putting on an act and was not intoxicated. He testified that Martin was coherent during the second interview.

So much for the evidence before Judge Sharp. Martin asks us to consider two other pieces of evidence in evaluating Martin's suppression argument. The government does not get in a snit over our ability to do so, nor should it. Neither piece of evidence undermines Judge Sharp's conclusion. First, Martin offers the back side of the waiver form, which contains the notation "*MARIJUANA* FUCKED UP"

and "WOOZY."[1] It seems clear that the substance of what was on the back of this form was before Judge Sharp. In response to a question from defense counsel at the suppression hearing, Robison admitted that Martin had stated that "he was all blanked up and woozy." Defense counsel did not follow up on this question. Moreover, in her argument to Judge Sharp, defense counsel noted that Martin "made the statement that he was woozy and all messed up—all blanked up actually." The notation itself does not add much to this evidence. It supports the fact that Martin actually stated that he was messed up, but the government does not deny that fact. The words on the form, consistent with Robison's testimony, simply disclose that Robinson jotted down what Martin said.

Martin also offers a videotape of his actions in the holding cell. Defense counsel obtained the tape shortly before trial and sought to have it admitted. Judge Sharp did not show it to the jury but admitted it for purposes of the appellate record.[2] The tape is inconclusive on whether Martin was under the influence of alcohol or marijuana. Although Martin moves around in his cell more than his cohort Rahiem Martin (who appears on the tape in a different cell) and lays down in rather odd positions, there is nothing about his movements that suggests an impaired condition. If anything, Martin seems bored. In sum, the district judge did not err by concluding that Martin knowingly and voluntarily waived his *Miranda* rights.

■ Martin next claims that there is insufficient evidence to support his conviction. In order to prove a violation of 18 U.S.C. § 922(g)(1), the government must prove, beyond a reasonable doubt, that the defendant (1) had a previous felony conviction, (2) possessed a firearm, and (3) that the firearm had traveled in or affected interstate commerce. *United States v. Woolfolk*, 197 F.3d 900, 903 (7th Cir.1999). Martin contests only the possession element. We apply a highly deferential standard in reviewing a challenge to the sufficiency of the evidence. *Id.* at 904. We draw all reasonable inferences from the evidence in favor of the government, and we will reverse only if no reasonable jury could have found guilt beyond a reasonable doubt. *Id.*

■ A reasonable jury could have convicted Martin on half the government's evidence. First, Martin admitted possessing the TEC 9 and ditching it while being chased by police. Officer Richard Lineberry, who was driving one of the police vehicles pursuing Martin, saw the driver

---

1. Because of a mix-up, defense counsel did not learn of this notation until preparing this appeal. The government introduced at the suppression hearing, and provided to defense counsel during discovery, a copy of the waiver form that did not include the back side. At trial, the government introduced the original document, a two-sided form, which included the notation on the back. At that time, neither the government nor defense counsel realized that the form differed from the earlier copies. Martin concedes that the omission of the second side was an "unintentional oversight" on the government's part.

2. It is unclear why Martin offered this videotape at trial. Because the tape stops at approximately 1 p.m. and resumes taping hours after Martin gives his confession, Martin apparently wanted to admit the tape at trial to challenge Robison's credibility regarding the admissions, presumably as to whether they occurred or not. The record contains no indication that Martin wanted to admit it to challenge the judge's suppression rulings. These arguments are flipped on appeal. Martin does not claim that the judge erred by not admitting the tape with regard to credibility. Rather, he claims that the judge erred by not suppressing the confession because of Martin's intoxication, which is substantiated by the tape. Nonetheless, and in part because the tape was not made available to Martin until well after the suppression hearing, we will consider the tape as evidence of Martin's impaired state.

exit his maroon Buick carrying a weapon. Lineberry, who has extensive experience with guns, testified that the gun he saw the driver carrying was the same gun later found under the pine tree by a human member of the police canine team. Lineberry identified Martin as the driver. Lineberry also testified that Martin ran around the front of the house in which the pine tree was located. Patrol Officer William Browand, who was driving the police car behind Martin, testified that he saw a weapon in the driver's hand as he ran from his vehicle. It had a "long magazine coming out of the bottom of it" and was "silhouetted against the house."

Finally, Officer Joseph Bickel testified that Locksley ("the wonderdog") was instructed to follow the scent of Martin. Locksley picked up Martin's scent at the car; it led him to the gun under the pine tree.

■ Martin makes two main arguments in rebuttal. First, he claims that his fingerprints were not found on the TEC 9. But that, of course, is not unusual because fingerprint oils do not always adhere to all surfaces. Second, in a creative display of geography, cartography, and video, Martin argues that the testimony of Officers Browand and Lineberry was incredible as a matter of law. In *United States v. Alcantar*, 83 F.3d 185 (7th Cir.1996), we noted that testimony will be found incredible as a matter of law only if "it would have been physically impossible for the witness to observe what he described, or impossible under the laws of nature for those events to have occurred at all." The testimony here, put simply, was not physically impossible for the witnesses to observe.

Accordingly, the judgment is AFFIRMED.