

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2006

# USA v. Sanford

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1490

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Sanford" (2006). *2006 Decisions.* Paper 1315.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1315

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1490

———————

UNITED STATES OF AMERICA,


v.

CURTIS SANFORD
a/k/a HASSEN,

Curtis Sanford,
Appellant

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 03-cr-00015J)
Honorable David Stewart Cercone, District Judge

———————

Submitted under Third Circuit LAR 34.1(a)
March 7, 2006

BEFORE: ROTH and GREENBERG, Circuit Judges, and
BUCKWALTER, District Judge*

(Filed: April 5, 2006)

———————

*Honorable Ronald L. Buckwalter, Senior Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

OPINION

BUCKWALTER, <u>Senior District Judge</u>.

Curtis Sanford a/k/a Hassen ("Sanford") appeals from his conviction on two counts of knowingly, intentionally, and unlawfully distributing less than five (5) grams of a mixture and substance containing a detectable amount of cocaine base in the form commonly known as "crack," a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Sanford raises three issues in his appeal from his conviction:

1. Whether the District Court properly admitted into evidence Agent Zacur's and Detective Price's preliminary hearing and in-court identifications of Sanford because the identification procedures were not unduly suggestive and, even if they had been, circumstances surrounding the officers' initial observations of Sanford survived the totality of circumstances test?

2. Whether Sanford enjoyed the full exercise of his constitutional right to present a defense when the District Court: 1) admitted relevant testimony from . . . Sanford's expert witness on six areas that impact eyewitness identification accuracy; and, 2) excluded testimony regarding a Department of Justice research report containing suggested procedures for obtaining eyewitness identifications because Sanford failed to provide notice of the testimony and the testimony was irrelevant?

3. Whether the District Court acted within its discretion when it denied Sanford's request for a jury view of the crime scene

because both parties presented ample evidence of the crime scene for the jury to make an informed decision regarding Detective Price's ability to identify Sanford from his vantage point?

(Appellant's Br. at 3-4). We discuss each issue in the order presented.[1]

## I. Agent Zacur's and Detective Price's Identification

Sanford argues that the District Court improperly denied his motion to suppress Agent Zacur's and Detective Price's preliminary hearing and in-court identifications of Sanford. We "review[] the [D]istrict [C]ourt's denial of the motion to suppress for clear error as to the underlying facts, but exercise[] plenary review as to its legality in light of the courts's properly found facts." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) (internal quotations omitted) (citations omitted).

A pretrial identification procedure violates a defendant's due process rights when it creates a substantial risk of misidentification. United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995). A two-step approach is utilized to determine whether, under the totality of circumstances, an out-of-court identification procedure violated a defendant's rights to due process. First, the defendant must demonstrate that the procedure in question was impermissibly or unnecessarily suggestive. United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003) (citing Reese v. Fulcomer, 946 F.2d 247, 259 (3d Cir. 1991)). If the defendant overcomes this burden, the court then assesses the reliability and admissibility of the out-of-court identification under the totality of the

---

[1] As we write this opinion for the parties, the fact section will be omitted.

circumstances. <u>Reese</u>, 946 F.2d at 259. The following five factors must be weighed in conducting the totality of the circumstances analysis: (1) the opportunity of the witness to view the defendant at the time of the crime; (2) the degree of attention of the witness; (3) the accuracy of any witness' prior description of the criminal by the witness; (4) the witness' level of certainty at the pre-trial identification; and, (5) the amount of time between the crime and the pre-trial identification. <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972).

After holding a Suppression Hearing regarding Sanford's motion to suppress pretrial and in-court identifications on December 9, 2003, the District Court made findings of fact and denied Sanford's motion in a memorandum and order of January 26, 2004.

First, we conclude that the District Court's findings of fact are not clearly erroneous as they are supported by the record. Second, based on the District Court's findings, we believe Sanford has failed to overcome his initial burden of proving that the preliminary hearing identification procedure was unduly suggestive. Based on the District Court's findings, Agent Zacur and Detective Price made their identifications at a preliminary hearing, and Sanford and his counsel had full opportunity to cross examine Agent Zacur and Detective Price at that hearing. Clearly, the preliminary hearing identification procedure was not impermissibly suggestive.[2]

---

[2] We also note that Agent Zacur's and Detective Price's identifications would survive the <u>Biggers</u> totality of the circumstances analysis. Agent Zacur met with Sanford face-to-

4

## II. Exclusion of Department of Justice Research

Sanford claims that the District Court violated his Sixth Amendment constitutional right to present a defense by excluding testimony regarding a Department of Justice ("DOJ") research report, entitled "Eyewitness Evidence: A Guide for Law Enforcement, Research Report," which detailed guidelines and procedures for dealing with eyewitness identifications. With respect to our standard of review, it is plenary when determining whether a defendant's Sixth Amendment right has been violated. United States v. Tyler, 164 F.3d 150, 156 (3d Cir. 1998) (citation omitted). However, we note that a circuit court "generally review[s] decisions of a district court concerning the admission and exclusion of evidence for abuse-of-discretion." Rineheimer v. Cemcolift, Inc., 292 F.3d 375, 382-83 (3d Cir. 2002).

To establish that the exclusion of Dr. Jonathan Schooler's testimony concerning the DOJ research report violated his Sixth Amendment right to present a defense, Sanford must prove: "First, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and

---

face in a well-lit apartment on two occasions; Agent Zacur made a concerted effort to study Sanford in their meetings, knowing he would have to identify Sanford in a future proceeding; Agent Zacur observed Sanford on a third occasion in a well-lit Sheetz parking lot; Agent Zacur recorded a description of Hassen after their first meeting and the description matched Sanford's; and Agent Zacur identified Sanford with certainty at the preliminary hearing. With respect to Detective Price, he observed Sanford through the apartment window on October 29, 2002; Detective Price watched Sanford at the Sheetz parking lot on October 30, 2002; and Detective Sheetz identified Sanford with certainty at the preliminary hearing. Therefore, the identifications would survive the totality of the circumstances analysis.

5

favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." Gov't of Virgin Islands v. Mills, 956 F.2d 443, 446 (3d Cir. 1992) (citing Rock v. Arkansas, 483 U.S. 44, 56 (1987)).

Sanford offered Dr. Schooler as an expert to testify regarding the potential inaccuracies of Agent Zacur's and Detective Price's identifications. Before trial, after hearing argument from the parties, the District Court denied the government's motion for a Daubert hearing with respect to Dr. Schooler's testimony and decided to allow Dr. Schooler to testify with respect to the following areas: "1) cross-racial identification; 2) distance of the perpetrator; 3) exposure to suggestive sources; 4) exposure between encoding and test; 5) the effects of delay; 6) the effect of multiple witness identifications; and 7) the relationship between confidence and accuracy." (App. 24.)

At trial, Dr. Schooler testified only with respect to the areas permitted by the District Court. During direct examination, Sanford attempted to question Dr. Schooler regarding the DOJ report. The government objected to this testimony, arguing that: (1) it was irrelevant because the application of DOJ guidelines was not an issue in the case, (2) the studies on the identification issue were relevant, not the DOJ Report; and (3) Sanford had agreed not to reference the DOJ report. The District Court, after noting that neither the District Court nor the government had been put on notice that Dr. Schooler would testify with respect to the DOJ Report, sustained the government's objection.

6

Based on our review of the record, we believe that Sanford has failed to establish all three elements of the Mills test. First, Sanford did not show that he was deprived of the opportunity to present evidence in his favor. The District Court provided Sanford with ample opportunity to present Dr. Schooler's testimony on the identification issue. Second, Sanford did not establish that this omission was material. Third, the District Court's decision to exclude testimony on the DOJ Report was not arbitrary. In sustaining the government's objection that the DOJ Report was not relevant, the District Court also noted that Sanford failed to notify the District Court of his intention to question Dr. Schooler on the DOJ Report. Therefore, we conclude that Sanford's Sixth Amendment rights have not been violated and that the District Court did not abuse its discretion.

## III. Denial of Request for a Jury View of Crime Scene

Sanford argues that the District Court abused its discretion in denying his request for a jury view of the alleged crime scene. Granting or denying a motion to view is within the discretion of the district court. Unites States v. Woolfolk, 197 F.3d 900, 905-06 (7th Cir. 1999) (citation omitted). In making its decision on a motion to view, a district court weighs "a variety of factors involving the fair and efficient conduct of a trial." Id. at 906 (citation omitted). We review the District Court's decision to deny the motion to view only for abuse of discretion. Id. at 905-06 (citation omitted).

On April 7, 2004, in a memorandum and order, the District Court denied

Sanford's motion for jury view of the alleged crime scene. The District Court reasoned that Detective Price's testimony regarding October 29, 2002 was not a critical component of the government's case, that Detective Price's observation of Sanford was not limited to October 29, 2002, and that Sanford's attempt to undermine Detective Price's alleged observation could be accomplished through videotape or photograph evidence. Based on this reasoning, the District Court concluded that the probative value of the jury view of the alleged crime scene was substantially outweighed by the potential for confusion of the issues, undue delay and redundant nature of the evidence.

Sanford believes this jury view was necessary in order for the jury to make an informed decision regarding Detective Price's ability to identify Sanford from his vantage point. At trial, Sanford presented an expert who had videotaped the crime scene. The government challenged the videotaped evidence based on the expert's failure to replicate the conditions under which Detective Price observed Sanford. Sanford argues that the government's challenge of his expert supports his contention that the jury needed to visit the alleged crime scene.

We believe that the District Court did not abuse its discretion in denying Sanford's motion to view. Based on the record, it is evident that the jury was presented with ample evidence from which to make an informed decision regarding Detective Price's ability to identify Sanford on October 29, 2002. Sanford's expert's failure to replicate the conditions of identification is not the fault of the District Court.

8

**IV. Conclusion**

Based on the reasons set forth above, we affirm the decision of the District Court.