**Kim BAUERS, Plaintiff–Appellant,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN, et al., Defendants–Appellees.**

**Nos. 99–3753, 00–1136.**

United States Court of Appeals, Seventh Circuit.

Submitted March 26, 2002.*

Decided March 27, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

ORDER

Dr. Kim Bauers, a former employee of the Wisconsin Regional Primate Research Center, brought this suit after her employment contract was not renewed in 1998. After summary judgment proceedings and a trial, the district court entered judgment against Dr. Bauers, and she appeals. We affirm.

This case has a confusing factual and procedural history, but can be summed up as follows. Dr. Bauers was employed as a research scientist at the Primate Center, part of the University of Wisconsin–Madison, between 1989 and 1998 under fixed-term, renewable appointments. Dr. Bauers's research focused on the reproduction and genetics of stump-tailed macaques, which required her to take numerous extended trips to Thailand. In March 1995 she traveled to Thailand for what would be her last trip as an employee of the University. Unable to return to Madison by her scheduled return date of September 1995, she was granted subsequent extensions by John Hearn, her supervisor, and Virginia Hinshaw, the Dean of the Graduate School at the University. While she was in Thailand, numerous disputes arose between Dr. Bauers and the University over the University's concern that she had considerably overspent her budget, made inappropriate telephone calls, and disobeyed directives from the University to return to Madison. Dr. Bauers was still in Thailand in April 1996 when Hearn told Hinshaw about an affair he had with Dr. Bauers (it is not clear from the record what circumstances prompted him to disclose this information). Shortly thereafter Hinshaw removed Hearn as Dr. Bauers's supervisor. Around this time, Dr. Bauers was required to provide the University with materials necessary for a grant application, but she failed to timely do so. As a result, her research was not included in the University's grant proposal, and the University would not receive any funding for Dr. Bauers to continue her research.

Hinshaw ordered Dr. Bauers to return to Madison by May 31, 1996, or face disciplinary proceedings for abandoning her job. Dr. Bauers responded that medical problems would prevent her from returning until June 30, and Hinshaw initi-

ated a pre-dismissal hearing against Dr. Bauers. After the hearing, the University terminated Dr. Bauers's employment effective August 1, 1996 for insubordination and for failure to meet scientific obligations. Dr. Bauers's termination was overturned on appeal because the University had failed to give Dr. Bauers proper notice of her termination and had imposed too harsh of a sanction, and she was reinstated under a one-year fixed-term appointment. In May 1997 the University informed Dr. Bauers that her appointment would not be renewed due to a lack of funding and a "program redirection." Dr. Bauers's employment with the University ended in February 1998 when her appointment expired.

In 1997 Dr. Bauers received a discharge in bankruptcy. She did not list any of the defendants as a creditors on her petition, and did not inform them of the bankruptcy proceedings until October 1999.

In 1998 Dr. Bauers filed suit against the defendants under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of 1964. Relevant to this appeal (she either voluntarily dismissed or does not appeal the dismissal of any other claims), Dr. Bauers alleged that the defendants denied her due process by not following proper University procedures when they decided not to renew her appointment and that the defendants denied her equal protection by terminating her employment on the basis of her sex. One of the defendants, the Board of Regents of the University of Wisconsin, filed a counterclaim against her, asserting among other things that she had converted University funds by making inappropriate telephone calls from Thailand and by failing to account for her use of a $17,000 travel advance.

The district court granted summary judgment to the defendants on Dr. Bauers's due process and equal protection claims, but allowed several other claims (not relevant on appeal) as well as the Board's counterclaim to proceed to trial. A jury found in favor of the defendants on Dr. Bauers's claims and in favor of the Board on its counterclaim, and awarded the Board approximately $22,000 in damages. Dr. Bauers filed numerous post-trial motions, including a Rule 60(b) motion to vacate the judgment in favor of the Board on its counterclaim because she had been discharged in bankruptcy in 1997. The district court denied the motions.

1. Summary Judgment Rulings

 While Dr. Bauers's arguments are not entirely clear, she appears to first challenge the district court's determination that she had failed to prove that she was discriminated against on the basis of her sex. This argument is undeveloped and difficult to discern, but she seems to suggest that "Dean Hinshaw based her decision to terminate [Dr. Bauers]] upon [Dr. Bauers's] status as a woman with whom Hearn engaged in an improper relationship." To avoid summary judgment on her equal protection claim, Dr. Bauers needed to present evidence that 1) she is a member of a protected class, 2) she was otherwise similarly situated to members of the unprotected class, 3) she suffered an adverse employment action, 4) she was treated differently than members of the unprotected class, and 5) the defendant acted with discriminatory intent. *McPhaul v. Board of Comm'rs of Madison County*, 226 F.3d 558, 564 (7th Cir.2000) *cert. denied*, 532 U.S. 921, 121 S.Ct. 1358, 149 L.Ed.2d 288 (2001). But Dr. Bauers presented no evidence that she was treated differently than any similarly-situated males and therefore failed to establish a prima facie case of an equal protection violation.

■ As for her due process argument, Dr. Bauers asserts that the court erroneously found that she was not entitled to due process because her fixed-term renewable appointments did not give her a property interest in continued employment at the Center. We find no error. The requirements of due process apply only to property interests encompassed by the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To have a property interest in a benefit such as continued employment, a person must have "a legitimate claim of entitlement to it"; a unilateral expectation or abstract desire for the benefit does not create a property interest. *Id.* at 577, 92 S.Ct. 2701. Dr. Bauers has pointed to nothing in the language of her fixed-term appointments that gave her a claim of entitlement to continued employment. Dr. Bauers also failed to identify a state law or rule creating a property interest in continued employment. *See id.* While she cites Wis. Stat. § 230.37(2), which sets forth procedures for handling employees who become physically or mentally incapable of performing their jobs, she presented nothing but unsupported speculation to show that her employment was not renewed because the defendants perceived she had a disability. To the contrary, the evidence shows that her employment was not renewed because of the University's loss of funding and a "program redirection." Dr. Bauers also points to § 3.06 of the University's policies and procedures, which states that "[n]onrenewal decisions may be appealed when nonrenewal is alleged to be arbitrary or capricious or for reasons prohibited by law." But the policy says nothing about University employees having a property interest in continued employment, and provides that the University retains the right to reduce staff through nonrenewal because of a "funding loss." A

funding loss is one of the reasons the University gave for not renewing Dr. Bauers's appointment, and she cannot point to anything in the record to show that her appointment was not renewed for any improper reason. Dr. Bauers therefore failed to show that she had a property interest in her continued employment, and she was not denied due process when her appointment was not renewed.

2. Trial Errors

Dr. Bauers next raises numerous challenges regarding the conduct of her trial. She first asserts that the district court erred by admitting into evidence tape recordings made by Hearn of two telephone conversations between herself and Hearn, arguing that the recordings were inadmissible under Wisconsin law. She argues that Wis. Stat. § 885.365(1), which prohibits the introduction of taped telephone conversations at trial in Wisconsin state courts, barred the tapes from being used at her federal trial. But federal law governs the admissibility of evidence in federal diversity suits, not state law, and she fails to show that the district court abused its discretion by admitting the tapes under federal law. *See* 18 U.S.C. § 2511(d) (party to telephone conversation may record it); 18 U.S.C. § 2515 (intercepted oral communications inadmissible only if interception was in violation of federal law); *Jackson v. Bunge Corp.,* 40 F.3d 239, 245 (7th Cir.1994). Dr. Bauers also challenges a host of other rulings by the court during trial, including the court's alleged refusal to allow her to present certain testimony at trial, its ruling that she had to present her case in a single day, and its failure to include her proposed language in the jury instructions. But Dr. Bauers did not object to any of these rulings at trial and has waived any challenge on appeal. *United States v. Williams,* 44 F.3d 614, 618 (7th

Cir.1995); *see also Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1165 (7th Cir.1998) (failure to object to jury instructions constitutes waiver); *Doe By and Through G.S. v. Johnson*, 52 F.3d 1448, 1457 (7th Cir.1995) (failure to object to limitation on testimony constitutes waiver).

## 3. The Board's Counterclaim

■ With respect to the Board's counterclaim, Dr. Bauers first asserts that the district court erred by denying her Rule 60(b) motion to alter or amend judgment because she had not timely raised her discharge in bankruptcy as an affirmative defense to the Board's counterclaim. Dr. Bauers filed a Chapter 7 no-asset bankruptcy petition in May 1997 and received a discharge in August 1997, approximately ten months before she filed the present suit. Dr. Bauers did not list the Board as a creditor on her petition, and she neither pleaded the discharge as an affirmative defense to the Board's counterclaim nor informed the Board of her discharge at any time during the pendency of the suit. After the district court entered judgment in favor of the Board on its counterclaim, Dr. Bauers filed her Rule 60(b) motion arguing for the first time that the judgment was void because the Board's counterclaim had been discharged by the bankruptcy proceedings. The district court denied the motion, finding that she had caused "needless delay and a waste of judicial resources" by not raising the issue earlier.

The district court properly denied Dr. Bauers's Rule 60(b) motion. Under Fed. R.Civ.P. 8(c) a party must plead as an affirmative defense "discharge in bankruptcy." Dr. Bauers did not do so here; rather, she waited to alert the court and the Board of her discharge in bankruptcy until after judgment had been entered. Because she did not raise the discharge as

an affirmative defense, she has waived it. *See Rizzo v. Sheahan*, 266 F.3d 705, 714 (7th Cir.2001); *see also Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 967–68 (7th Cir.1996) (district court did not abuse discretion by denying defendant leave to amend complaint to add affirmative defense of discharge in bankruptcy). We express no opinion regarding the dischargeability of the Board's claim and conclude only that Dr. Bauers's failure to timely raise the affirmative defense of discharge in bankruptcy waives her claim.

■ Dr. Bauers next asserts that the district court erred in denying her motion for judgment as a matter of law under Fed.R.Civ.P. 50(b) with respect to the Board's counterclaim. However, Dr. Bauers first presented the motion after the jury reached its verdict with respect to liability. Under Fed.R.Civ.P. 50(a), a motion for judgment as a matter of law must be brought before the case is submitted to the jury. Because she failed to present her motion in a timely manner, the district court did not abuse its discretion by denying it. Dr. Bauers also argues that the amount of damages found by the jury is not supported by the evidence. But a $22,000 verdict is not unreasonable in light of the ample evidence from which the jury could conclude that she had misused approximately $17,000 in advances from the Board and had made approximately $4,000 in inappropriate telephone calls. *See Savino v. C.P. Hall Co.*, 199 F.3d 925, 935 (7th Cir.1999) ("If there is a reasonable basis in the record for the jury's verdict, it must stand").

Dr. Bauers's remaining arguments are unsupported by any relevant authority or citations to the record, as required by Fed.R.Civ.P. 28(a)(9). This court is not obligated to construct arguments for the parties, or comb the record to find factual support for their assertions. When a par-

ty fails to develop the factual and legal basis for a claim, as Dr. Bauers has done, the arguments are deemed waived. *Muhich v. C.I.R.*, 238 F.3d 860, 864 n. 10 (7th Cir.2001).

AFFIRMED